**UNITED STATES ex rel. WEBER v. RAGEN, Warden.**

**No. 9796.**

United States Court of Appeals
Seventh Circuit.

July 25, 1949.

Rehearing Denied Aug. 15, 1949.
Writ of Certiorari Dismissed Oct. 10, 1949.
See 70 S.Ct. 49.

580

Urban A. Lavery, of Chicago, Ill., court-appointed counsel, for petitioner-appellant.

Ivan A. Elliott, Attorney General, William C. Wines, Assistant Attorney General (Raymond S. Sarnow, James C. Murray, A. Zola Groves, Assistant Attorneys General, of counsel), for appellee.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner was indicted, tried before a jury and convicted of murder in the Circuit Court of Peoria County, Illinois. He was sentenced to death. The Supreme Court of Illinois granted a petition for writ of error and made the writ a supersedeas. On the writ of error the Supreme Court, on November 9, 1948, affirmed the judgment of conviction. The People v. Weber, 401 Ill. 584, 83 N.E.2d 297. A petition for rehearing was made and denied January 12, 1949. Certiorari was sought in the Supreme Court of the United States and denied May 2, 1949. Weber v. State of Illinois, 336 U.S. 969, 69 S.Ct. 930. The petitioner sought without success to file a petition for habeas corpus in the Peoria Circuit Court. On December 8, 1948, the petitioner filed, as a poor person, in the District Court of the United States for the Northern District of Illinois a petition for habeas corpus, and an amendment thereto was filed on December 28, 1948, seeking his release from the judgment of conviction for murder and his confinement by respondent awaiting the date of his execution. On oral motion of the Attorney General of Illinois the petition was dismissed by the District Court on December 29, 1948, and a Certificate of Probable Cause was issued by the District Court. From this judgment of dismissal the petitioner has appealed. The Governor extended the date of execution to August 1, 1949. We appointed counsel to represent the petitioner here, and counsel with great diligence and ability briefed and argued the case here. We acknowledge his services with appreciation.

The questions presented are that the confessions introduced in evidence were not voluntary but were coerced and obtained through fear and intimidation, and made while the petitioner was being held in custody and before he was presented before a proper magistrate or charges filed against him; and, secondly, that the counsel appointed by the trial court to defend him was incompetent. All of this, it is alleged, violated his right to due process of law under the Fourteenth Amendment to the Federal Constitution.

"The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are designated as the 'law of the land.' (Citing cases.) Where this requirement has been disregarded in a criminal trial in a state court this court has not hesitated to exercise its jurisdiction to enforce the constitutional guarantee." Buchalter v. People of State of New York, 319 U.S. 427, 429, 63 S.Ct. 1129, 1130, 87 L.Ed. 1492.

The federal courts are open to protect those accused and convicted of crime from the violation of the due process guaranteed by the Fourteenth Amendment. Though a state court may decide that confessions obtained were lawfully obtained, such decision is not binding upon the federal courts where proper showing is made that the confessions were not obtained in accordance with the standards of due process. Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192.

In these and many other cases the Supreme Court of the United States has granted certiorari to the highest courts of the states and inquired, upon a proper showing, as to the violation of federal constitutional rights and, upon a showing of such violation, has reversed the judgment of these courts.

In the instant case certiorari from the Supreme Court of the United States to the Supreme Court of Illinois was sought and denied. The violations of all constitutional rights alleged here to have occurred were alleged on certiorari and urged to the Supreme Court of the United States. The Supreme Court was obviously not impressed with the petitioner's assertion that he had been deprived by the courts of Illinois of his constitutional rights. We have been cited no case where the Supreme Court has denied certiorari, as in this case, and later decided that the United States District Court should take jurisdiction in a collateral proceeding in habeas corpus to consider the identical questions that had been presented in the direct proceeding where certiorari was denied. The rule in such cases is stated as follows in Ex Parte Hawk, 321 U.S. 114, 118, 64 S. Ct. 448, 450, 88 L.Ed. 572. "Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily re-examine upon writ of habeas corpus the questions thus adjudicated."

■ There are no extraordinary circumstances in this case that would take it out of the rule just stated. The objections to the confessions taken in this case were before the Supreme Court of Illinois and the Supreme Court of the United States. There were five confessions obtained from the petitioner. Only the fifth one, dated December 23, 1947, was introduced by the State. As to this confession the petitioner, when he took the stand in his own behalf, "testified that, when asked, he agreed to make the statement of December 23, that he made all the answers contained in the confession, and signed it voluntarily." People v. Weber, supra, 401

Ill. 589, 83 N.E.2d 301. At the time he testified he certainly could not have been under coercion or fear. He was under the protection of the court and in open court he affirmed that he voluntarily made and signed the confession of December 23, 1947. This confession he repudiated on the stand and testified to an entirely different version of the murder and laid it on one John Crowley whom no one had ever seen or heard of in the locations where the petitioner said Crowley had been or stayed or any place else.

The confession which he repudiated, he said, was made to protect his wife from being killed by this fictitious John Crowley and in order that he might be permitted to see his wife and mother, and because he hoped he might get a life sentence. It was not charged at the trial or here that the petitioner was mistreated or subjected to violence or that any promises were made to him to induce him to make the confession of December 23. The petitioner objects here, as he did in the Supreme Court of Illinois and in his petition for certiorari to the Supreme Court of the United States, that the confession of December 23, 1947, was not admissible as evidence because his prior confessions were involuntary, and especially the first one made on December 13, 1947, after he was apprehended in Texas, and that the vice of that involuntary confession followed in the others. While this first confession was in his own handwriting, he claimed in the state courts that it was obtained from him by statements of the F. B. I. agents who had arrested him in Texas that his wife was in jail with a lot of prostitutes and that she would be released if he made the statement and he would be given only a life sentence. This was denied by the officers. The State never introduced this confession.

As we have indicated before, these questions raised here as to the confessions were raised in the Supreme Court of Illinois and passed upon adversely to the petitioner, and the same questions were likewise presented in the petition for certiorari to the Supreme Court of the United States. The petitioner has made a record on those

questions in both of these courts which is directly opposed to what he contends here.

The fact, if it be a fact, that the confession made in Texas on December 13, 1947, and never used by the State, was invalid because it was made under coercion or inducement, did not vitiate the confession of December 23rd about which there were no contentions of promises or inducements. The latter confession was made under far different circumstances. The petitioner admitted that it was voluntarily made before different officers many miles away from where the first confession was taken and ten days later. The confession was not contaminated because it followed one that, for the sake of argument only, we concede was not voluntary.

■■■ The rule in such circumstances is stated thus in Lyons v. State of Oklahoma, 322 U.S. 596, 603, 64 S.Ct. 1208, 1213, 88 L.Ed. 1481: "The Fourteenth Amendment does not protect one who has admitted his guilt because of forbidden inducements against the use at trial of his subsequent confessions under all possible circumstances. The admissibility of the later confession depends upon the same test— is it voluntary. Of course the fact that the earlier statement was obtained from the prisoner by coercion is to be considered in appraising the character of the later confession. The effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary. If the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process." None of the contaminating circumstances mentioned in the above rule are here present as to the first or any of the other confessions.

We now reach the contention made here that all proceedings subsequent to the confession of December 23, 1947, were a nullity, because that confession was taken while the petitioner was unlawfully detained and during which time his wife and mother were not permitted to see him. The confession was made four days after the petitioner was returned to Peoria and seven days before he was presented in any court or before any magistrate in Illinois. This point was not raised or discussed in the state courts. It was raised in the petition for certiorari in the Supreme Court of the United States.

On December 12, 1947, the petitioner was arrested by F. B. I. agents in Houston, Texas, where he had fled following the murder. On December 13, 1947, he was presented before a Commissioner in Houston. Some proceedings were had there, but we do not know what. The petitioner was placed in jail and on December 18, 1947, he was turned over to the state officers and returned to Peoria, arriving there on the 19th. He first appeared in court about December 30, 1947. We assume he was being held without a warrant until that date. The record does not show when he was indicted. He received a copy of the indictment about December 30th.

■■■ His arrest without warrant was authorized. Ill.Rev.Stat.1947, Ch. 38, Sec. 657. It then became the duty of the arresting officer to take the petitioner "without unnecessary delay" before the nearest magistrate in the county. Ill.Rev.Stat. 1947, Ch. 38, Sec. 660. Here he would have been entitled to a hearing and admission to bail "if the facts failed to disclose a case of murder where the proof is evident or the presumption great." The People v. Crabb, 372 Ill. 347, 24 N.E.2d 46. Failure to present the petitioner as required by statute may have been an abuse of process, The People v. Crabb, supra, 372 Ill. 353, 24 N.E.2d 46, but did it in and of itself render that which he testified he did voluntarily an involuntary act and was the confession vitiated thereby? The failure to present the petitioner before a magistrate without undue delay contrary to the statute of Illinois is a fact to be considered on the question of due process, Ashcraft v. State of Tennessee, supra.

But such failure alone is not in and of itself a denial of due process so as to render inadmissible in evidence a confession voluntarily given . as in the instant case. The Supreme Court of Illinois did not pass upon this point as it was not before it, but the petitioner did urge it in his petition for certiorari in the Supreme Court of the United States. The latter Court was not impressed with the petitioner's assertion and denied certiorari. In other words, there was no violation of any federal constitutional right of the petitioner.

The petitioner relies heavily upon Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 608, 87 L.Ed. 819. The Upshaw case rule announced for federal courts in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, The Upshaw case arose in the District of Columbia. Upshaw's contention was that his detention for thirty hours without presenting him before the nearest magistrate violated Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and under the rule in the McNabb case, supra, the confession taken from him in that time could not be used against him. The Supreme Court pointed out that the defendant could not have been convicted without the confession and held that the McNabb rule applied and the confession was not admissible and reversed the case.

It must be remembered that in the Upshaw case no rule of constitutional law was involved, and the Supreme Court was only laying down a rule of practice for the federal courts and especially the District of Columbia which is under federal jurisdiction only. The admissibility of evidence, like the competency of witnesses, is "governed by common law principles as interpreted and applied by the federal courts in the light of reason and experience." Wolfle v. United States, 291 U.S. 7, 12, 54 S.Ct. 279, 78 L.Ed. 617.

As the Supreme Court said in the Buchalter case, supra, "the due process clause of the Fourteenth Amendment does not enable us to review errors of state law however material under that law." 319 U.S. page 431, 63 S.Ct. page 1131, 87 L.Ed.

1492.' It is only federal constitutional questions that are decided and "the Amendment does not draw to itself the provisions of state constitutions or state laws." 319 U.S. 429, 63 S.Ct. 1130. The United States District Court does not sit in habeas corpus proceedings to review errors of law in the state courts. It sits only to determine whether or not the proceedings in the state court amount to a violation of federal constitutional rights. Lyons v. State of Oklahoma, supra, 322 U.S. 605, 64 S.Ct. 1213, 88 L.Ed. 1481. The Upshaw case has no application here as it lays down a rule for admissibility of evidence in federal courts and particularly for those in the District of Columbia and does not expound or apply a rule of constitutional law. States are not required to conform to the common law rules of evidence used in federal jurisdictions, and a failure to do so does not violate due process. The confession went in evidence as admittedly voluntary, as the petitioner himself testified. It told a different story than the petitioner told on the stand. The conflict of his voluntary confession and his story on the witness stand went to the jury and the jury resolved the conflict against the petitioner. The jury was the proper tribunal to judge on that issue. .

We do not think the failure to present the petitioner to a magistrate before the admittedly voluntary confession was obtained and permitted to go into evidence, even if an error of law, amounted to a denial "of 'that fundamental fairness essential to the very concept of justice,' and in a way that 'necessarily prevent[s] a fair trial.'" Lyons v. State of Oklahoma, supra, 322 U.S. 605, 64 S.Ct. 1213. Our review of the facts and circumstances attending this confession satisfies us that the complex of intimidation, coercion, promises or oppressive and violent treatment which produced the confessions held invalid by the United States Supreme Court in Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 1357, Harris v. State of South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 1357, and Turner v. State of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 1357, is absent from this case. There is a strong suggestion that the Supreme Court has already adopted our con-

clusion from the fact that while it reviewed these cases, all of which were before it contemporaneously with the instant case, it did not take this case for review but denied certiorari, and only Mr. Justice Douglas in his concurring opinion took the extreme position taken by the petitioner here that his unlawful detention and the refusal to permit him to see his wife and mother constituted a denial of due process of law. Because the confession of December 23, 1947, was admittedly voluntary and free of the evil circumstances of the Watts, Harris, and Turner cases, supra, we reject the petitioner's contention. There was no denial of due process in the manner in which the confession was obtained and used.

The second question, and what the petitioner's counsel calls the most serious question, is the incompetency of counsel. Since the counsel appointed in the trial court tried the case and pursued it through the Supreme Court of Illinois, that counsel never raised in the Illinois courts the question of its own competency. The Supreme Court of Illinois on the trial record and the briefs before it had an excellent opportunity to pass upon the competency with which that counsel had tried the case and handled it on appeal, and the Supreme Court of Illinois on two separate occasions in the course of its opinion commented with approval on the competency of counsel, saying finally at 401 Ill. 605, 83 N.E.2d 308, "Defendant received a fair trial, and our examination of the entire record discloses a trial remarkably free from error. He was represented by competent counsel, as the record discloses, and he has been ably represented upon review in this court. His constitutional rights were adequately safeguarded." This is a solemn adjudication by the Supreme Court of Illinois upon its knowledge of the record that the petitioner had competent counsel.

■ Thus we enter upon a consideration of the petitioner's allegation that his counsel was incompetent with a solemn declaration advisedly made upon due consideration of the record by the Supreme Court of Illinois that the petitioner did have reputable, competent counsel. In one aspect this was a question of state law, for the petitioner under Illinois law was entitled to competent counsel, Ill.Rev.Stat. 1947, Ch. 38, Sec. 730. The state tribunal that could and did pass upon that question made a deliberate finding and arrived at an opinion that contradicts the petitioner's assertion that his counsel was incompetent. The question was thus decided so far as Illinois law goes. The petitioner, however, raised the question of his counsel's incompetency in his petition for certiorari to the Supreme Court of the United States, contending that this incompetency was so grave as to amount to a denial of a fair trial and the fundamental concept of justice embraced in the due process clause of the Fourteenth Amendment. The Supreme Court did not consider the showing made as to the incompetency of counsel to be such as to violate the fundamental concept of justice, for it denied the petition. Doubtless the Supreme Court of the United States was impressed with the considered declaration of the competency of counsel made by the Supreme Court of Illinois. So are we. Nevertheless, we have fully considered the petitioner's allegations in his petition and his assertions in his brief and on oral argument, and we cannot say his counsel was incompetent.

In addition to his averment of the conclusion that his counsel was incompetent, the petitioner alleges the fact that on the trial his counsel, after the petitioner had taken the stand to testify in his own behalf, permitted the State to show by evidence that the petitioner had previously been convicted of the crime of larceny of a motor vehicle, and the court then instructed the jury that this was an infamous crime and might be considered along with the other evidence on the question of the petitioner's credibility as a witness. There is no question but what the petitioner was so convicted. It is the petitioner's contention that such a crime is not an infamous crime within the meaning of the statutes of Illinois, and that his counsel did not know what an infamous crime was or enough to exclude the evidence of the conviction from the record or except to the instruction. The statute relied upon as to the definition of an infamous crime is Ill.Rev.Stat., 1947 Ch. 38, Sec.

587, and reads as far as material: "Every person convicted of the crime of * * * larceny, if the punishment for said larceny is by imprisonment in the penitentiary, shall be deemed infamous * * *." There is obviously nothing in this contention, as Ill.Rev.Stat.1947, Ch. 38, Sec. 388a makes the stealing of a motor vehicle larceny punishable by imprisonment in the penitentiary. Larceny of an automobile is contained in the generic term of "larceny." People v. Crane, 356 Ill. 276, 190 N.E. 355.

We learn from a letter to the petitioner from the President of the Peoria Bar Association, attached to the petition and written in reply to a letter from the petitioner, that his court—appointed counsel was 35 years of age. He was a graduate of Northwestern University Law School, was admitted to the practice of law in Illinois in 1937, and was in service from 1942 to 1946. He was of average ability, with a general law practice in the course of which he had handled a reasonable number of criminal cases, including one murder case. He had also been associate counsel in one or two other murder cases. Referring to this lawyer, counsel for the petitioner states: "He was utterly disqualified therefor to cope with the able State's Attorney and the State's Attorney's assistants * * *." How old and experienced the latter were does not appear in the record. Certainly the age and experience of the petitioner's counsel do not brand him as incompetent. We have known many very competent lawyers of the age of 35 and the experience of the petitioner's counsel.

The petitioner points as further evidence of his counsel's incompetency that he put in evidence the first confession made by the petitioner. We do not know what was in the first confession which counsel might have considered advantageous to go to the jury. A lawyer might well wonder, as we do, why counsel put that confession in evidence. Maybe it was a mistake; maybe not. Are we to second guess a competent lawyer into incompetency? Court—appointed counsel was a member of the Peoria Bar in good standing. That is prima facie evidence of his competency. There are competent, more competent and most competent lawyers. When does a competent lawyer become incompetent? That is always a question of fact and the foundation for the proof of sufficient facts of incompetency must be alleged in the petition. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667; Achtien v. Dowd, 7 Cir., 117 F.2d 989. Counsel's competency has been favorably passed upon by the Supreme Court of Illinois in this case, and that meets the state requirements.

As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one.[1]

The petitioner has not alleged in his petition or suggested here facts which if true show that his counsel was incompetent, in the sense that his incompetence destroyed the essential integrity of the proceeding as a trial. This was the petitioner's duty, United States v. Ragen, 7 Cir., 166 F.2d 976; Diggs v. Welch, supra, 80 U.S. App. D.C. 5, 148 F.2d 667.

No case has better indicated the constitutional right of a defendant to counsel and its fulfilment than Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. There the trial court appointed the entire bar of the county as counsel. The defendants had counsel and competent counsel, but what was every-

---

[1] People v. Touhy, 361 Ill. 332, 355, 197 N.E. 849; People v. Sturch, 389 Ill. 82, 93, 58 N.E.2d 873; State v. Rush, 108 W.Va. 254, 150 S.E. 740; State v. Smith, 119 W.Va. 347, 193 S.E. 573.

body's responsibility became no one's responsibility, and the imposing array of counsel just went through the motions of giving the defendant a trial. That was a denial of due process because it destroyed the essential integrity of the trial. Nothing in this record remotely suggests such failure of counsel. Passing upon all that has been alleged and suggested on this point, we think there is no showing that the petitioner's counsel in the trial and appeal of his case was so lacking in professional skill and ability and loyalty to his client and so delinquent in his conduct of the case in the state courts as to be guilty of the incompetency contemplated by the due process clause of the Fourteenth Amendment.

We find no error. The petitioner did not allege nor did counsel suggest any possible facts that would have entitled the petitioner to the relief he sought, and the District Court properly dismissed the petition. The judgment of the District Court is affirmed.

A motion of the petitioner is before us for further stay of his execution which is set for August 1, 1949. The motion is granted, and the Clerk will enter an order against the respondent who holds the petitioner for execution August 1st, staying said execution until September 16, 1949, to enable the petitioner to take such further steps in this case as he may be advised.