[Crim. No. 3076. First Dist., Div. Two. May 16, 1955.]

THE PEOPLE, Respondent, v. CLARENCE L. THOMPSON et al., Appellants.

Clarence L. Thompson, in pro. per., George Nye, Public Defender, Rudolf H. Michaels, Assistant Public Defender, Steward, Kennedy & Cannon and Joseph G. Kennedy for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

NOURSE, P. J.—The defendants, Clarence L. Thompson, Norman Smith and Clarence Williams were jointly charged with and found guilty by a jury of (1) kidnapping for the purpose of committing robbery (Pen. Code, § 209), (2) robbery, (3) burglary, connected together in their commission; the defendant Thompson was charged with, and admitted, three prior felony convictions, defendant Smith two, and defendant Williams one. Their motions for new trial were denied and they were sentenced to San Quentin—the three sentences of each of them to run concurrent with each other but consecutive to any prior incomplete sentence. They appeal from the judgments and from the order denying their motions for a new trial.

When on December 11, 1953, at 7 p. m. James A. Brennan, the controller of the Associated Metals Company, left the office of the company at 2730 Peralta Street, Oakland, after having locked up he found that one of his front tires was flat. The light was not good. A man with a gun in his hand ordered him to move over to the seat next to the driver's seat, got into the driver's seat, and told him that they were going for a little ride. When he turned to that man another person in the back seat, of whom he had not been aware, hit him on the side of the head and ordered him to look straight ahead. The first man drove the car approximately one and a half blocks to a darker area, took his wallet, searched him for weapons and demanded the key of the front door and the combination of the safe which Brennan gave him, writing down the combination. The man gave the pistol to the one in the rear, told Brennan to do what he was told and went to the office of the company. Brennan did not see the man in the rear, but his speech was that of a colored person. He asked Brennan to pass back the money he had with him and Brennan did so. A man came to the car and the man in the back seat asked him how much he had got. The latter then ordered Brennan in the back seat and a third man appeared who tied Brennan's ankles and wrists with tape and put a piece across his mouth. The third man also had a colored accent. After the three left, Brennan freed himself by breaking the tape. He found his wallet in the car; nothing had been taken from it. It was found that from the safe a metal

cash box with currency, checks and some copies of sales slips and a second metal box, containing employees' earning records were missing. It was also found that the empty tire had no defect so that the air had probably been let out.

At a police line-up of Negroes among whom were the defendants Brennan could not identify any of them by sight and his only identification was that the voice of one of the men, said to have been the defendant Thompson, sounded like the man who had been in the front of the car. He had "a sort of a hard penetrating type of voice." As to the third man Brennan testified that he was a very small man from whose appearance he would not be able to tell whether he was Caucasian or Negro. Mr. Brennan also testified that in his presence a police inspector told Williams that he must know Mr. Brennan, because Mr. Brennan knew him, which was not true. The defendants Thompson and Smith were together in a car with a third man, not Williams, when they were arrested. Smith was driving. The car was registered to Smith's girl friend. In the glove compartment two rolls of tape were found. At the home of the girl friend a pistol was found of the same kind as the one with which Brennan was threatened.

The verdicts against the three defendants are supported mainly by their confessions and other statements made to police inspectors when they were under arrest and by the accordance of the facts stated in these confessions with those of the crime stated above, to which Mr. Brennan testified. Each of the confessions implicates the other defendants, but the confession of each was duly received in evidence as against himself only and the jury was repeatedly so instructed. Both Thompson and Smith separately indicated to police officers the place where they had thrown away the boxes taken in the burglary. First Thompson showed a spot different from that shown by Smith, but the second time he brought them to the same spot as Smith. The boxes were not found there.

At the trial all three defendants denied all connection with the crime and the making or voluntary character of their alleged statements. They appeal on separate briefs and their grievances will be discussed separately.

### Appeal of Thompson

This appeal is taken in propria persona. ▮ Appellant contends first that sections 209 and 207 Penal Code are unconstitutional under federal and state Constitutions as viola-

tive of the due process and equal protection clauses because they make it possible to prosecute one person, like appellant, for kidnapping for the purpose of robbery, whereas another on the same facts would be prosecuted for robbery only, so that the threat of prosecution for kidnapping could be used as a means of extortion. The contention is wholly without merit. It might at most have had some factual basis in the text of section 209 Penal Code prior to the 1952 amendment, when confining, holding or detaining a person to commit robbery was sufficient to subject him to the severe punishments of that section, even when there had been no confinement other than that necessarily incident to the commission of the robbery (see *People* v. *Knowles*, 35 Cal.2d 175 [217 P.2d 1], especially the dissenting opinions) but the 1951 amendment requires for kidnapping to commit robbery that a person be kidnapped or carried away, an element of the crime present in this case where Mr. Brennan was carried away in his car for one and a half blocks (*People* v. *Chessman*, 38 Cal. 2d 166, 192 [238 P.2d 1001]), but not normally incident to a robbery. (Even the old text was not held unconstitutional in the Knowles case. The minority only criticized the construction of the section as applying to a confinement necessarily incident to the robbery.) Contentions as to attempts at extortion in the above manner in this and in another case which are not based on any evidence at the trial cannot be considered on this appeal.

Appellant next contends that the verdicts against him were as a matter of law not supported by the evidence. He reaches this result mainly by eliminating as not legal evidence a statement written by Inspector Rodman and the testimony of said inspector that he took it when Thompson orally made it on February 1, 1954, but that Thompson after having read it refused to sign it. The statement contained among other things Thompson's participation in the crime as the man who sat in the back of Brennan's car, whereas defendant Smith played the principal part in the front seat and in the office, his assistance in transporting the two boxes taken, the taking of money and checks from them and the division of the money at his place, among himself, Smith and "Shorty" (Williams) he receiving $20. It further contained the statement that it was free and voluntary, without promises, force or threats, to which circumstances Inspector Rodman also testified. Thompson at the trial denied the making and the truth of all the statement. The written statement was received in evidence

over unspecified objection of defendant, whose attorney had earlier expressly declared that he would let it go in without *voir dire* when it was read by Inspector Rodman to the jury as the statement given by Thompson. It obtained its evidentiary value from Inspector Rodman's testimony as to its taking and contents. (Ann. 23 A.L.R.2d 919, 924 et seq., § 5.)

An oral confession can be proved by parol evidence of any person who heard and understood it when it was made by the defendant (8 Cal.Jur. 117; *People* v. *Luis,* 158 Cal. 185, 193 [110 P. 580]). Even if the unsigned sheets of paper should not have been received in evidence, the error would not have been prejudicial after the unobjected reading of the statement contained in them to the jury by Inspector Rodman. The weight to be given to said evidence in connection with the evidence of Mr. Brennan was for the jury and we cannot say that it was insufficient as a matter of law.

Appellant claims error in including in the information the first count relating to kidnapping for the purpose of committing robbery although this count had allegedly been excluded by the committing magistrate. As nothing with reference to the appearance of defendant before the magistrate is in the record, we cannot consider the factual basis of the contention. But at any rate appellant did not move in the superior court to set aside the information on that ground in accordance with section 995, Penal Code, and hence the defendant is precluded from afterwards taking such objection (Pen. Code, § 996; *People* v. *Sierra,* 117 Cal.App. 2d 649, 652 [256 P.2d 577]; *People* v. *Reimringer,* 116 Cal. App.2d 332, 337 [253 P.2d 756]).

It is contended that under section 1127, Penal Code, it was the duty of the court on its own motion to point out to the jury by instruction all the evidence they could consider against the defendant. The section does not contain such requirement. The jury was correctly instructed that each count as to each defendant should be judged separately on the evidence relating thereto. Whenever evidence had been admitted which was admissible as to one defendant only this had been clearly stated to the jury. It was no reversible error not to repeat and summarize all instances of such restriction in the final instructions.

Appellant urges that under section 654, Penal Code, he cannot be punished for both robbery and kidnapping for the purpose of robbery because these are two different ways in which the same act has been made punishable. However, as

said before, there are here two acts, the transportation of Brennan at gun point in his own car for the purpose of committing robbery in a darker place, which constitutes the kidnapping, and the taking of his wallet and key at gun point, which constitutes the robbery. ▮ Multiple convictions are correct when separate and divisible acts have been proved as the basis of each conviction, even though those acts were closely connected in time and were part of the same criminal venture. (See *People* v. *Knowles, supra,* 35 Cal.2d p. 188.) Kidnapping and robbery have under such circumstances been held separate offenses for each of which defendant can be punished. (*People* v. *Chessman, supra,* 38 Cal.2d 166, 192; *People* v. *Bruno,* 140 Cal.App. 460, 462 [35 P.2d 391]; *People* v. *Beltran,* 94 Cal.App.2d 197, 203 [210 P.2d 238].) *People* v. *Knowles, supra,* came to a different result because in that case there had been no separate act of transportation, which as section 209, Penal Code, then read, was not required for kidnapping for the purpose of robbery. ▮ Even if the transportation and the taking at gun point was in this case to be considered as one indivisible act, so that appellant could be punished for only one of these offenses, appellant could not be prejudiced as the two sentences were made to run concurrently (*People* v. *Ponce,* 96 Cal.App.2d 327, 330 [215 P.2d 75]; *People* v. *McWilliams,* 87 Cal.App.2d 550, 552-553 [197 P.2d 216]).

Appellant Thompson complains of the overruling of many of his objections to the admission of evidence, especially the admission of statements which were not shown to have been freely and voluntarily made. The only specific part of this grievance which could have any relevancy relates to his statement to Inspector Rodman which has been treated hereinbefore. His complaint of lack of showing of the corpus delicti is incomprehensible as at the beginning of the trial the witness Brennan testified in detail to the happening of the crime and all its parts and elements. ▮ Proof of the corpus delicti does not require showing of perpetration of the crime by the person or persons charged (14 Cal.Jur.2d 184).

▮ Error is predicated on the failure of the court to give instructions that the testimony of an accomplice ought to be viewed with distrust (Code Civ. Proc., § 2061, subd. 4) and as to the manner in which such testimony must be corroborated. There was no occasion for such instruction because Thompson's codefendants at the trial denied all participation in the crime and did not incriminate him. Their extrajudicial statements which implicated Thompson were not admitted against him

and could not be considered against him even with distrust or after corroboration.

Appellant claims prejudicial misconduct of the district attorney in his closing argument. Only twice an objection was made during this argument, both times on the ground that facts were stated which were allegedly not in evidence. At one of these occasions the facts stated were found to be in evidence and this point is not brought out on appeal. In the other the jury was duly admonished. Otherwise there was no assignment of misconduct or request for an instruction to disregard. There is no contention that any of the misconduct now asserted was of such character that it could not have been cured by any admonition. ■ Moreover, we have found all misconduct urged completely unfounded and harmless or at any rate such that admonition could have sufficiently cured it. It is then no basis for reversal. (*People* v. *Simon*, 107 Cal.App.2d 105, 125 [236 P.2d 855].)

Appellant's contention that the court erred in denying his motion for a new trial is not supported by any specific argument not already rejected herein and does not require discussion.

### Appeal of Smith

■ Defendant Smith's only grievance is the admission in evidence of his purported confession of February 2, 1954, which he contends was signed under the influence of psychological abuse. (It is conceded that there was no physical abuse.)

After appellant was arrested on January 29, 1954, he was held in custody for investigation, without charge. He was several times questioned by Inspectors Deuel or Rodman or both; there is no contention that in any instance the questioning was unduly prolonged. On January 31, he gave a statement to Inspector Deuel who wrote it out and he signed it. He contended at the trial that he signed it without reading because he was promised that he would be released if he signed. This was denied by Inspector Deuel who also testified that the statement was shown and read to Smith before he signed it and that it was a correct narration of his statement. The statement does not contain any confession or admission of participation in the events of December 11, 1953. It states, however, that he, Smith, found a paper bag with a lot of checks of the Associated Metals Company on Market Street, that he took them to 3010 Adeline Street where he lived with his girl friend, Isabel King. He intended to pass them

with a false signature. He had not disposed of them and they might still be in a drawer if Isabel had not disposed of them. Thereafter, on February 1, he was ostensibly released but immediately again questioned and rebooked. On February 2, after having been told about and shown the confessions of Thompson and Williams, he signed another statement. In this statement he described in detail his part in the events of December 11th and the participation of Thompson and Shorty. He himself was the man who let out the air from a tire, threatened with a pistol, drove Brennan's car, asked for the combination of the safe and the keys. He went with Thompson, who had been in the back seat, to the office while Shorty watched Brennan. He went inside and took the two boxes. The three went to Thompson's house where they divided the money. The next day he and Thompson disposed of the boxes on the other side of Broadway Tunnel, after having taken out the checks. At the trial Smith took the position that he had signed the confession because of threats that otherwise his friend Isabel would be involved because of the gun found in her place, and that his parole would be violated. He also complained of other forms of psychological abuse and of refusal, as unnecessary, of his requests for an attorney. It is conceded that all this was denied by the inspectors as witnesses, so that in all these respects the evidence is conflicting. As this conflict was resolved by the court and by the jury against defendant, we cannot disturb their determination when the evidence of the witnesses for the People sufficiently supports it (*People* v. *Burwell,* 44 Cal.2d 16, 30 [279 P.2d 744]).

It is, however, argued that the questioning over four days without counsel being present and the fact that two conflicting statements were given is sufficient to vitiate the confession. This is not so.

In relation to its invalidating effect on a confession, psychological coercion by questioning is not considered the equivalent of physical violence, which is always bad. Questioning serves a social purpose in solving crime, although it can become extortion of involuntary confessions by undue prolongation or deprivation of rest or relief, not here involved. (*Stein* v. *New York,* 346 U.S. 156, 184 [73 S.Ct. 1077, 97 L.Ed. 1522].) "A confession is not rendered inadmissible merely by the fact that it was obtained during an undue delay between arrest and the time when accused was brought before the court . . . or that he was not represented by counsel" (22

C.J.S. 1431; *People* v. *Aguilar*, 140 Cal.App. 87, 93 [35 P.2d 137, 142]). Appellant's change of position does not indicate undue pressure but is readily explained by the confessions of his accomplices. Even his original statement indicated his connection with the crime by stating his possession of part of the loot, although it attempted to give it a more harmless explanation. The confession was not inadmissible as a matter of law.

### Appeal of Williams

Like Smith, Williams contends that his alleged confession was obtained by improper means and was therefore inadmissible and that without that confession there was no evidence to connect him with the crime. After his arrest on February 1, 1954, Williams was questioned by Inspectors Deuel and Rodman in the presence of a police stenographer. The stenographer testified that he dictated the questions and answers identically into a recording machine. The police inspectors received a transcript of the record made a very short time thereafter and Inspector Rodman found the transcript to conform to what actually had been said. He read the transcript to the jury over objection. The transcript was not admitted in evidence. It is not contended on appeal that this is not a manner in which an oral confession can be proved; we found on the appeal of Thompson that it can validly be done.

The confession contained that defendant was taken along by the other two men, whom he did not know well, that they told him to sit in the back seat so that the man in the front seat could not get away, that when they came back with the boxes the man was put in the back seat and he put tape on him and that they went to Thompson's house on Filbert Street where they divided the money of which he got $20. At the trial Williams contended that the inspectors had told him how to answer the questions and that he had done so after being abused and threatened with a death sentence or life imprisonment and with violence, and after having received promises of help if he complied. All these contentions were denied by the three police witnesses and it is conceded that the conflict was resolved by the verdict and that appellant cannot rely on this evidence on appeal. It is, however, contended that the statement itself shows circumstances which make it inadmissible. Appellant relies on the following final language of the statement:

"Q. And this—statement that you've given is entirely free

and voluntary? A. I mean, well, after you know that I was there and all the time that it happened—— Q. Well, you haven't been threatened in any manner, have you? A. Well, they told me that I was in it, that I was in it as deep as they were; I didn't even know that there was going to be any robbery committed. Q. Well, when you say that they told you that you were in it as deep, you mean that was during the robbery, they told you that you were in as deep as they were? A. Yes, sir, yes. Q. Well, no; I mean, Inspector Rodman or myself have not threatened or forced you to say anything that you didn't want to say? A. Well, you all told me you were going to put all charges on me— three charges on me. Q. Well, we told you that you could be charged with robbery, burglary and kidnapping, didn't we? A. Yes, you told me that. Q. Well, that is correct, and this statement has been given in a free and voluntary manner, without promises or rewards at any time? A. Well, oh, you say that they were going to throw—— Q. Well, you haven't, in any way, been threatened, we've just asked you to tell the absolute truth, isn't that correct? A. Yes, that's right.''

The above conversation does not prove circumstances which necessarily vitiate the confession. It shows that the confession was not voluntary in the sense that Williams wanted to make it or that it was ''completely spontaneous, like a confession to a priest, a lawyer, or a psychiatrist. But in this sense no criminal confession is voluntary.'' That the defendant had special motives for making it does not prevent the confession from being voluntary in the sense decisive of admissibility. (*Stein* v. *New York, supra,* 346 U.S. 156, 186.) Both in that case and in *People* v. *Burwell, supra,* 44 Cal.2d 16, 31, 32, it has recently been held that the test for admissibility is trustworthiness. The fact that appellant felt free to discuss his motives with the officers and did not feel constrained to just answer their questions as to voluntariness in the affirmative increases for us its trustworthiness, the more so because appellant in so doing, unintentionally confirmed his involvement in the crime. The truthful statement that there would be three charges against defendant may have been a reason for defendant to try to make a better impression by confessing, but it does not appear that this happened at the instance or advice of the officers. Even if the interrupted sentence should be completed as meaning that defendant was told that they were going to

throw the book at him, which is only a matter of conjecture, then it again does not appear that it was said to extort a confession or that any leniency was promised in case defendant confessed. At any rate, we cannot say that such conjecture must prevail over the clear statement that defendant was not in any manner threatened and only asked to tell the absolute truth. It may be that the police officers pretended to have more proof of Williams' participation than they actually had, but the employment of such an artifice to obtain a confession does not render it inadmissible, if the means employed are not calculated to procure an untrue statement. (22 C.J.S. 1450; *People* v. *Connelly*, 195 Cal. 584, 597 [234 P. 374].) Here there is no indication that the attitude of the officers was calculated to procure or did procure any untrue statement.

Judgments and order affirmed.

Kaufman, J., and Draper, J. pro tem.,* concurred.

Appellant Thompson's petition for a hearing by the Supreme Court was denied June 8, 1955, and appellant Williams' petition for a hearing by the Supreme Court was denied June 15, 1955.

*Assigned by Chairman of Judicial Council.