426 So.2d 548 (1982)
William MIDDLETON, Appellant,
v.
STATE of Florida, Appellee.
No. 60021.
Supreme Court of Florida.
December 22, 1982.
Rehearing Denied March 2, 1983.
*549 John H. Lipinski, Miami, for appellant.
Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
This case is on appeal from a circuit court judgment. Appellant was convicted of first-degree murder, grand theft, and unlawful use of a firearm in the commission of a felony. The circuit court sentenced appellant to death for the crime of first-degree murder. We have jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const.
On February 16, 1980, a citizen called the police and reported that her friend Gladys Johnson had not been seen for two days, that her car was missing and her house was completely closed and locked. Police officers broke into the house and found the body of Gladys Johnson. She had been shot in the back of the head with a shotgun. The murder weapon was found in the house.
On February 17, appellant William Middleton was arrested in New York City on suspicion of "jostling," that is, being a pickpocket. The main evidence of appellant's guilt was a confession he made in New York to an assistant district attorney of that state. The attorney who conducted the interview and the stenographer who wrote down appellant's statement testified at the trial.
Gladys Johnson was the mother of a man whom appellant had met in prison. When *550 appellant was released on parole on December 28, 1979, he went to live with Gladys Johnson in the Miami area. Mrs. Johnson offered appellant a home because he had nowhere else to go. On February 14, 1980, they had an argument because Mrs. Johnson would not allow appellant to use her car. That evening, when she went to sleep on the living room sofa, he took her shotgun and sat with it across his lap for about an hour, contemplating killing her. When she awoke, he shot her in the back of the head. He locked the house and left in her car. That night, he drove to Tampa. The next day he returned to Miami, left the car at a bus station, and boarded a bus for New York City, taking Mrs. Johnson's two pistols with him. He sold the guns in New York.
The manager of the Greyhound Bus station in North Miami Beach testified that he reported the presence of a car that apparently had been abandoned on his lot. This car was identified as belonging to Gladys Johnson. The keys to the locks on the front door of her house were found in the car.
Appellant contends that there was insufficient proof of premeditation to support the verdict of guilty of first-degree murder. This argument is based on part of appellant's confession in which he said that the shooting was a "snap decision." The confession also said, however, that appellant sat for an hour thinking about killing Mrs. Johnson. In either event, that the decision was made at all is sufficient to prove premeditation. Proof of the element of premeditation does not require that thought or reflection of any specific minimum duration be shown. Songer v. State, 322 So.2d 481 (Fla. 1975), vacated on other grounds, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).
Appellant contends that there was insufficient evidence to support the verdict on the grand theft charge. The charge was based on appellant's taking of the victim's car and two pistols. It was proven by competent, substantial evidence.
Appellant's main point on appeal concerns his confession and the manner in which it was introduced at trial.[1] Appellant argues that the trial court erred in allowing the stenographer from New York to read the confession into the record. Appellant argues that because he never saw, signed, or acknowledged the transcription of his statement, it was not properly authenticated. He cites Marshall v. State, 339 So.2d 723 (Fla. 1st DCA 1976), cert. dismissed, 354 So.2d 982 (Fla. 1977), and Williams v. State, 185 So.2d 718 (Fla. 3d DCA 1966), for the proposition that a transcription of a defendant's oral statements is not admissible in evidence as a written confession unless it is signed or otherwise acknowledged by the defendant. See Annot., 23 A.L.R.2d 919 (1952). Appellant argues that this rule should apply to the reading of a transcription of a defendant's oral statements since this Court said in Haines v. State, 158 Fla. 9, 27 So.2d 414 (1946), that reading a defendant's statement to the jury is equivalent to introducing the written document into evidence.
The state responds by arguing that the stenographer was allowed to read his notes to refresh his memory. Although we do not agree that the evidentiary doctrine pertaining to refreshing the memory justifies what was done at trial, we find that the doctrine *551 of "past recollection recorded" does. There is a difference:
There is a clear and obvious distinction between the use of a memorandum for the purpose of stimulating the memory and its use as a basis for testimony regarding transactions as to which there is no independent recollection. In the former case it is immaterial what constitutes the spur to memory, as the testimony, when given, rests solely upon the independent recollection of the witness. In the latter case the memorandum furnishes no mental stimulus, and the testimony of a witness by reference thereto derives whatever force it possesses from the fact that the memorandum is the record of a past recollection, reduced to writing while there was an existing independent recollection. It is for that reason that a memorandum, to be available in such cases, must have been made at or about the time of the happening of the transaction, so that it may safely be assumed that the recollection was then sufficiently fresh to correctly express it.
Volusia County Bank v. Bigelow, 45 Fla. 638, 646, 33 So. 704, 706 (1903); See also Great Atlantic & Pacific Tea Co. v. Nobles, 202 So.2d 603 (Fla. 1st DCA 1967), cert. denied, 210 So.2d 225 (Fla. 1968); King v. Califano, 183 So.2d 719 (Fla. 1st DCA 1966). We conclude that the stenographer's testimony was proper not based on the theory of refreshed memory, but rather on the theory that his transcription was a recording of the statement he heard. Section 90.803(5), Florida Statutes (1979), provides:
The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
.....
(5) RECORDED RECOLLECTION.  A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
The stenographer testified that he had no independent recollection of appellant's confession, but that he had personally recorded the statement verbatim and had accurately transcribed his notes into the written statement which he then read to the jury. We hold that the stenographer's testimony was admissible as a "past recollection recorded."[2]
Appellant argues that the stenographer should not have been allowed to testify because he was not able to identify appellant as the person whose statement he recorded. However, the New York County assistant district attorney who testified at trial identified appellant, testified that he confessed to her, and provided the link between appellant and the stenographer's written transcript. It was this attorney who conducted the interview, and she identified appellant as the person whose confession was recorded by the stenographer. The attorney's testimony by itself was sufficient *552 evidence to prove the confession; the stenographer's reading of the transcript merely provided the details with its verbatim account.
Next appellant argues that it was error for the trial court, over his objection, to instruct the jury on the doctrine of felony murder. Appellant says that since there was no evidence to support such a charge, the instruction should not have been given. The indictment in this case charged that appellant committed first-degree murder by shooting the victim either from a premeditated design to effect her death or while in the perpetration of robbery. It has long been held that a first-degree murder indictment alleging premeditation is sufficient even though the state proceeds on alternative theories and the proof at trial supports conviction on the felony murder theory. Knight v. State, 338 So.2d 201 (Fla. 1976). It is also proper to allege the alternative methods of committing the crime where the state anticipates that there will be some evidence of felony murder. Here there was evidence that appellant took the victim's car keys and pistols and drove away in her car after shooting her. Since there was some evidence of robbery to support the alternative allegation of a killing in the perpetration of robbery, it was proper for the trial court to instruct the jury on felony murder.
We come now to the question of the sentence of death. Appellant challenges the constitutionality of the capital felony sentencing law on the grounds that the aggravating circumstances are vague and overbroad, that there is no compelling state interest in imposing capital punishment, that the law precludes consideration of mitigating factors, and that it has been arbitrarily and capriciously applied. These arguments have previously been disposed of by the decisions in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Fleming v. State, 374 So.2d 954 (Fla. 1979); Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979); and State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974).
The trial court found that appellant had previously been convicted of a felony involving the use or threat of violence, that at the time of the murder he was under a sentence of imprisonment, that the murder was committed for pecuniary gain, that it was especially heinous, atrocious, or cruel, and that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Appellant challenges the latter three of the above-listed aggravating circumstances.
The finding that the murder was committed for pecuniary gain was supported by the fact that appellant stole the victim's car and pistols. That there was some evidence of anger on appellant's part toward the victim did not preclude the finding of a pecuniary motive.
Appellant argues that the finding that the murder was especially heinous, atrocious, or cruel is not supported by the evidence. We agree. Although the deliberate murder of Mrs. Johnson was unquestionably atrocious as that word is understood in common parlance, the words of this aggravating circumstance have become legal words of art. The killing itself was not "accompanied by such additional acts as to set the crime apart from the norm" of deliberate killings. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). The evidence shows that the victim instantly died from a shotgun blast to the back of her head from close range. She had just awakened from a nap, was facing away from appellant, and had no awareness that she was going to be shot. See Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).
The trial court was correct, however, in finding that the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Appellant's confession said that he sat with the shotgun in his hands for an hour, looking at the victim as *553 she slept and thinking about killing her. This is clearly the kind of intentional killing this aggravating circumstance was intended to apply to. The cold-blooded calculation of the murder went beyond mere premeditation. See Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). The shocking thing about this murder is that the only thing the victim ever did to the appellant, so far as the record indicates, was to show him extraordinary kindness and generosity.
Appellant contends that the trial court erred in finding no mitigating circumstances. Specifically he argues that the judge should have found and considered the fact that appellant was operating under the influence of extreme emotional disturbance. He says that he was under great stress as the aftermath of his prison experience, that the tension built up, and that he lost his temper and directed his anger towards the victim. The evidence to support this position is not clear enough to enable us to hold that the trial judge erred in declining to find the existence of such mitigating factors. In addition, the jury's recommendation of a sentence of death is a strong indication that it did not find appellant's emotional state particularly compelling as a mitigating circumstance.
Even though we have disapproved one of the aggravating circumstances found by the trial court, there remain several other aggravating circumstances supported by evidence  appellant had previously been convicted of a violent felony, was on parole from a prison sentence, had a pecuniary motive, and murdered the victim in a cold, calculated, and premeditated manner. The jury recommended death and the judge found no mitigating circumstances. With the case in this posture, we conclude that the trial court's sentence is appropriate.
The convictions and the sentence of death are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
NOTES
[1] There was a pre-trial hearing on the admissibility of appellant's confession. Two officers of the New York City Transit Police testified concerning appellant's arrest and initial questioning. One of the officers said that when appellant was arrested, he spontaneously began to deny knowledge of the murder of a woman in Florida. The other officer said that appellant's companion, who was arrested at the same time, mentioned the possibility of appellant being wanted for a crime in Florida. Both officers testified that appellant was warned of his rights, did not ask that questioning cease, and did not ask to see an attorney. The statement testified to at trial was not made to the officers, but was made later that day in response to questioning by the assistant district attorney, who testified at trial. Appellant testified at trial that when he was arrested the officers told him he was wanted on suspicion of murder in Florida and that he falsely confessed because he was led to believe this was the only way he would avoid the death penalty. On this appeal, however, appellant does not contend that his confession was coerced or that the interrogation violated his constitutional rights.
[2] Other jurisdictions are in accord. See, e.g., Jordan v. People, 151 Colo. 133, 376 P.2d 699 (1962), cert. denied, 373 U.S. 944, 83 S.Ct. 1553, 10 L.Ed.2d 698 (1963); State v. Rosa, 170 Conn. 417, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S.Ct. 126, 50 L.Ed.2d 116 (1976); Hall v. State, 223 Md. 158, 162 A.2d 751 (1960); State v. Bindhammer, 44 N.J. 372, 209 A.2d 124 (1965); Lay v. State, 461 P.2d 1021 (Okl.Crim. App. 1969). Still other jurisdictions have reached the same result, without referring to the doctrine as "past recollection recorded," by holding that a written statement of a defendant's oral confession is admissible if a person who was present at the confession can verify its accuracy. See Ellenburg v. State, 353 So.2d 810 (Ala. Crim. App. 1977); People v. Thompson, 133 Cal. App.2d 4, 284 P.2d 39 (Dist.Ct.App. 1955); Freeman v. State, 230 Ga. 85, 195 S.E.2d 416 (1973); People v. Perkins, 17 Ill.2d 493, 162 N.E.2d 385 (1959); State v. Dierlamm, 189 La. 544, 180 So. 135 (1938); Craft v. State, 380 So.2d 251 (Miss. 1980); State v. Fox, 277 N.C. 1, 175 S.E.2d 561 (1970); 2 H. Underhill, Criminal Evidence, § 404 (5th ed. Interim Supp. 1979); 3 C. Torcia, Wharton's Criminal Evidence, § 666 (13th ed. 1973).