**Wallace ELAM, Jr., Petitioner,**

**v.**

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

**Civ. A. No. 66–C–130–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Jan. 24, 1967.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes now to the court upon a petition for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2241, by Wallace Elam, Jr., a state prisoner, and it is filed *in forma pauperis*.

Petitioner is now serving a life sentence for murder in the first degree pursuant to his conviction in the Circuit Court of Washington County, Virginia, of October 20, 1953. He was found guilty at that time of first degree murder in each of three separate indictments and was sentenced to life imprisonment on each one.

The record shows that following his above-mentioned convictions on October 20, 1953, petitioner did not appeal to the Supreme Court of Appeals, thus this avenue of relief is no longer available to him. He did, however, file a petition for a writ of habeas corpus in the Circuit Court of Washington County on December 23, 1965. A plenary hearing was held on the petition on March 24, 1966, where the petitioner was represented by court appointed counsel. The Circuit Court denied the writ and dismissed the petition. Following the requisite notice of appeal and assignments of error, the Circuit Court's denial and dismissal was appealed to the Supreme Court of Appeals. Then on November 30, 1966, the Virginia high court denied the writ of error.

■ We are therefore of the opinion that the petitioner has exhausted all of his available state remedies as required by 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). He is, as a result, properly before this court.

As noted above, petitioner stands convicted of three first degree murders. Petitioner asserts that out of his trial and conviction several errors arose which deprived him of his constitutional rights. Specifically he alleges that he was denied a preliminary hearing prior to his grand jury indictment; that he was denied adequate and effective assistance of counsel; and that he was denied the right to appeal his three convictions because he was not advised of this right.

This court has examined the record of the testimony at the state habeas corpus hearing and, in addition, has examined the record of the original trial. This latter record is generally not available to the courts in habeas corpus proceedings. However, due to the foresight of defense counsel this record was made and can now be examined with the petitioner's contentions in mind. The study which we have made of these records shows us that no plenary hearing is necessary at this stage in order to make a determination.

■ First petitioner alleges that he was denied a preliminary hearing before his indictment on the three charges of murder. The warrant of arrest for each of the three murder charges is part of the record. On the back of each one there is this printed phrase: "Upon the examination of the within charge, I find the accused." Then, immediately below this phrase and written in hand are these words and figures:

Sent to the Grand Jury
9–11–53

This is followed by the trial judge's signature. When asked if he had been brought into the County Court of Washington County on September 11, 1953, petitioner said at page 35 of the state habeas corpus transcript that he did not remember it. We find, however, that the record conclusively establishes that petitioner was given a preliminary hearing on September 11, 1953. Thus petitioner is entitled to no relief on this allegation.

■ Petitioner alleges next that he was not given effective assistance of counsel by his court appointed lawyers. On this point we note initially that the record shows that the court appointed not one, but two competent and discreet attorneys, Mr. Fred C. Parks and Mr. George M. Warren, Sr. These two men had great experience in criminal law, as it appears from Mr. Parks' testimony at page 41 of the state hearing:

I would say that Mr. Warren was one of the outstanding criminal lawyers in Virginia and I say further, without boasting, that I don't know that there

was a single capital case from the time that I was elected Commonwealth's Attorney until this case occurred, that one or both of us was not engaged in in this court and the Federal Court.

The petitioner alleges that he did not see his court appointed attorneys until the day of his trial. Yet he testified on direct examination at the state hearing at page 35 that he did remember being in court on the opening day of court, September 16, 1953 when the grand jury met and when the court appointed the two lawyers to represent him. He also testified that he remembers that he saw his lawyers and that he talked to one of them. This is supported by the testimony of Mr. Parks who testified as follows at page 38:

> * * * we were called in the day that he was indicted and appointed to defend him. I am sure that we conferred with him on that day because he was brought up to the courtroom and later we talked with his wife and his mother and some of the men from Tennessee.

Additionally, the jailer at that time, Elmer M. Rosenbaum, testified at page 46 that he remembered Mr. Parks coming to talk with the petitioner while he was in jail before the trial. Thus there is no substance to his contention that he saw his lawyers for the first time on the day of the trial.

▪ He alleges further, as part of his ineffective counsel allegation, that his counsel did not adequately prepare his defense in that they did not request that he be sent away to a mental hospital in order to determine in what manner his epilepsy might have entered into the crime. On this question Mr. Parks testified as follows at page 39:

> We were advised that he had had seizures of epilepsy before. His mother told us; his wife told us and he told us—our information was that he had not had any immediately—I mean by that, for two or three months before the hearing—before the offense was committed, and he had none at the time. We considered all of that. He

had none at the time, during the stress of this tragedy and he had none in jail and he had none up to the date of the trial. *We did go into it in the trial here and proved what had occurred by those who had known him.* (Emphasis added.)

This testimony is substantiated by the petitioner's own testimony at page 35 where he said he didn't think he had any seizures while he was in jail awaiting trial. Also the jailer testified at page 46 that to his knowledge, the petitioner had not had any seizures of epilepsy while he was in jail.

▪ In our opinion this matter of the petitioner's health was plainly within the pre-trial knowledge of the petitioner's counsel. We accept, as a statement made in good faith, the testimony of Mr. Parks where he says that the matter of epilepsy was considered. The record of the trial shows that the court was made aware of the possible effects of epilepsy in petitioner's actions. The fact that defense counsel did not request that petitioner be sent away for observation was simply an indication that counsel, in its exercise of discretion and judgment, had decided that it would not serve the ends of justice to have petitioner sent away for observation. The petitioner was entitled to a fair trial but not a perfect one in all matters of trial judgment. United States ex rel. Weber v. Ragen, 176 F.2d 579 (1949). We think he received a fair trial and we will not attempt fourteen years later to second guess the judgment of counsel on a point that would only weigh in determining whether petitioner had a perfect trial. Thus petitioner is entitled to no relief on this point.

▪ Petitioner alleges as another part of ineffective representation, that he was told by counsel that if he pleaded guilty he would get out in twelve years. He testified to this at the state habeas corpus hearing. His mother also testified at page 13 that the attorneys told her that too. But Mr. Parks on this point stated at page 39:

> [i]t has been stated here that one of us told him that he would be out in

twelve years. I never told him that and Mr. George M. Warren, Sr., never told him that in my presence. We never told his mother that and we never told any of his friends that. What we told them was that he would by [sic] lucky to escape the electric chair and we did advise him to plead guilty to the three charges of murder, and that was our best advice under all of the evidence that we were able to get and under the circumstances in which he stated to us that he killed these three people.

As an additional reason to believe that counsel did not tell him that he would be out in twelve years, we see that Mr. Parks said on page 41:

They [the family] all realized that he was in a desperate situation and it was our judgment that we would not let a jury, if we could help it, pass on his sentence. The Commonwealth's Attorney was Mr. Volney H. Campbell, at the time, and we discussed the question with him. He would not agree to anything except a trial and he wanted to try him before a jury and we said, "No, we will plead guilty to the Court and let the Court hear it," and this is what we did.

Mr. Parks testified at page 42 that the petitioner was definitely advised of his right to a jury trial, but he was told of the risk that it involved also. There is thus a direct conflict in the testimony of Mr. Parks and the testimony of petitioner on this "twelve year sentence" point. We hold that petitioner fails to carry the burden of proof. Mr. Parks' explanation of his actions is quite reasonable and acceptable.

We note additionally that petitioner testified at page 36 that he knew of no witnesses that he desired summoned that were not summoned.

▮ Lastly, petitioner alleges that he was denied the right to appeal because he was not advised of this right. The testimony at page 40 of the state habeas corpus hearing shows the following:

Q. Was there any discussion of an appeal?

A. [Mr. Parks] No, sir, there was no discussion of an appeal.

Q. Did he complain to you at all, the day of the trial, about the way you represented him, or Senator Warren?

A. He did not and neither did his mother or his wife or any of his friends. * * *

Q. Have any complaints been made to you since the trial about the way you and Senator Warren represented him?

A. Nobody ever complained at any time before or since about the services that we rendered.

Petitioner puts on no evidence to contradict this. In fact, his habeas corpus petition was not filed until over twelve years after the trial. When asked why he waited so long petitioner said at page 37 "Well, I just never did get around to it." The Virginia Supreme Court of Appeals said in Peyton v. Webb, 207 Va. 417, 149 S.E.2d 889 (1966) that where a prisoner seeking habeas corpus had given the impression that he was well pleased with the outcome of his trial at the time of the conviction, neither the court nor counsel had a duty to advise the defendant of his right to appeal. The court said this would invite groundless appeals. The record in the instant case shows no dissatisfaction as noted in the testimony quoted above. Thus we hold that counsel was under no duty to advise petitioner of his right to appeal.

For the reasons stated above, the petitioner has failed to convince this court that he is entitled to any relief because of his various allegations. It is therefore

Adjudged and ordered that the petition for habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.