Jimmy Ray HAIRSTON, Petitioner,

v.

C. C. PEYTON, Superintendent of Virginia State Penitentiary, Respondent.

Civ. A. No. 67–C–18–D.

United States District Court
W.D. Virginia,
Danville Division.

May 15, 1967.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

This case comes to the court upon a petition for a writ of habeas corpus, filed by Jimmy Ray Hairston *in forma pauperis*, pursuant to 28 U.S.C. § 2241.

Petitioner is currently serving a term of life imprisonment in the Virginia State Penitentiary, pursuant to a conviction for murder by the Corporation Court for the City of Danville, Virginia on January 25, 1965. At his trial before a jury, petitioner was represented by court appointed counsel. No appeal was taken from his conviction.

A habeas corpus hearing was conducted by the State court in Danville on June 10, 1966, as a result of a petition by the prisoner. Petitioner was represented by court appointed counsel and was afforded an opportunity to present testimony in his own behalf. The writ was denied by an order entered June 16, 1966. Petitioner's writ of error to the Supreme Court of Appeals of Virginia was denied on March 7, 1967.

Petitioner now seeks a writ of habeas corpus from this court, alleging inadequate representation by counsel, and the systematic exclusion of negroes from the Grand Jury and the trial jury.

The pertinent facts can be recited briefly: Petitioner was arrested on September 6, 1964, upon a warrant charging him with the murder of his wife. Upon arrival at the Detective Bureau of the City of Danville, a statement was taken from petitioner and signed by him. At the November 1964 term of the Grand Jury of the Corporation Court for the City of Danville, an indictment was returned charging the petitioner with murder. On October 14, 1964 the Corporation Court for the City of Danville ordered the petitioner committed to Central State Hospital for mental care and observation. Upon notification that the petitioner was not mentally ill, the petitioner was ordered returned for trial. A jury trial was held on January 25, 1965 and petitioner was convicted of first degree murder and sentenced to life imprisonment. A more detailed presentation of some of the facts is covered later in this opinion.

Petitioner's allegation, concerning inadequate representation by counsel, mere-

ly states that his attorneys failed to point out to the trial court that petitioner was being denied his constitutional rights. No mention is made of which rights were denied but the record shows that a claim of inadequate representation by counsel might have been based on these charges: (1) Counsel failed to adequately raise the question of petitioner's insanity (2) Counsel failed to advise petitioner of his right to appeal (3) Counsel called undue notice to the fact that petitioner was a negro and thus encouraged the potential racial prejudices of the trial jury.

■ Regarding the matter of insanity, petitioner's attorneys appear to have acted properly. Both the doctor at the Central State Hospital and petitioner's own physician stated that petitioner was not mentally ill and could distinguish right from wrong, although petitioner's physician testified that petitioner was emotionally unstable and subject to uncontrollable seizures. Petitioner's attorneys offered this evidence for what it was worth and submitted an instruction on insanity which the trial court refused. Petitioner's attorneys felt that this testimony was the major factor in securing a sentence of life imprisonment rather than death. It appears that petitioner's attorneys used the evidence of insanity as effectively as possible, and it is difficult to see what more they could have done.

■■ The failure of petitioner's attorneys to advise the petitioner of his right to appeal raises a more serious question and will require further examination of the facts. Petitioner was arrested immediately after the crime and signed a full confession. Petitioner did not take the stand at his trial to refute his confession and petitioner has never claimed, either at the trial or in the habeas corpus proceedings, that the confession was improper. The record also discloses evidence of at least one proper attempt by petitioner to assault his wife. The petitioner's wife was stabbed thirty-eight (38) times with an ice pick, and the hideousness of the crime caused petitioner's attorneys to fear that petitioner

would receive a death sentence upon conviction. In view of the unrefuted confession and the other evidence, petitioner's attorneys did not abandon hope of acquittal, but as a practical matter their main hope was to save petitioner from a death sentence. The attorneys succeeded in this matter and petitioner was sentenced to life imprisonment. The record discloses unrepudiated evidence that petitioner was satisfied with the life imprisonment sentence and felt that the attorneys had saved his life. Under such circumstances petitioner's attorneys felt it was needless to mention the right to appeal, since a new trial would once again expose petitioner to the possibility of a death sentence. The facts of this case are distinguishable from those in Puckett v. State of North Carolina, 343 F.2d 452 (4th Cir. 1965), where the petitioner *expressed* a desire to appeal and was not informed of his right to do so even though he was an indigent. In the present case, petitioner expressed no desire to appeal and was satisfied with his sentence. Petitioner's attorneys felt that it would not be in the best interest of their client to file an appeal, and run the risk of a death sentence at a new trial. Even assuming that the attorneys were mistaken in their belief, such a mistake did not amount to a denial of petitioner's constitutional rights. "[T]he court, and hence the state, is not a surety for the proper performance of counsel, whether assigned or retained * * *." United States ex rel. Mitchell v. Follettee, 358 F.2d 922, 927 (2d Cir. 1965). In Follettee, the Second Circuit Court of Appeals remanded the case for a hearing on the factual question of the trial judge's conduct. But as a matter of law, the court held that failure of petitioner's attorney to advise petitioner of his right to appeal did not deprive petitioner of his constitutional rights. "Occasional shortcomings of counsel are a danger confronting all, * * * and those able to retain counsel may forfeit the right to appeal through such oversight or ineptitude as fully as those who are not." United States v. Follettee, supra. In view of the particular facts of the present case, this court holds

that petitioner was not denied his constitutional rights because his attorneys failed to inform petitioner of his right to appeal.

■ The final ground for alleging inadequate representation of counsel rests on the claim that petitioner's attorneys called undue notice to the fact that petitioner was a negro, and that this encouraged the potential racial prejudices of the jury. A further examination of the facts is again required. In arguing to the jury, one of petitioner's attorneys told a story about an Indian named Red Cloud. The purpose of the story was to show that a person never really understands a situation until he places himself in another's shoes. The attorney suggested that petitioner was provoked by his wife, and ended the story by stating, "You go and stand in Red Cloud's shoes and then you come back to me and we can talk about this." Petitioner contends that classifying him with an American Indian encouraged racial prejudice against him. There is no need to examine whether such a contention is true. At the most, the attorney's story about Red Cloud could only be urged as a mistake in trial tactics, and did not amount to inadequate representation of counsel. Tompa v. Commonwealth of Virginia, 331 F.2d 552, 554 (4th Cir. 1964).

■ Lastly, petitioner alleges that he was denied his constitutional rights because negroes were systematically excluded from the Grand Jury and trial jury. At the State hearing on his habeas corpus petition, the petitioner offered evidence that only one of the seven grand jurors was a negro, and that there was one, or possibly no negroes on the trial jury. Long continued and unexplained variations in proportions of negroes and whites on jury lists furnishes evidence of systematic exclusion of negroes from jury service. Harper v. State of Mississippi, 251 Miss. 699, 171 So.2d 129 (1965). However, petitioner has offered no evidence of long continued exclusion of negroes, but points merely to the proportion of negroes on a single Grand Jury and trial jury. "Actually, whether the presence of a few Negroes on a venire containing many names is evidence tending to prove or disprove racial discrimination depends upon the proportions of Negroes and whites who are qualified for jury service. * * * Fairness in selection does not require proportionate representation of races upon a jury venire." Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Petitioner's only evidence of the negro proportion of the population in Danville was to solicit an "unofficial guess" from the clerk of the Corporation Court for the City of Danville. At the state habeas corpus hearing petitioner dwelt upon the number of negroes on a single Grand Jury and trial jury, and made no attempt to prove any long continued variation in proportions of negroes and whites on jury lists in the City of Danville. Thus petitioner has failed to raise any serious question as to the systematic exclusion of negroes from jury service in Danville, and a plenary hearing is not necessary.

For the reasons stated in this opinion and upon mature consideration of the facts relied upon by petitioner in the case at bar, this court feels that the allegations are without merit. Nothing would be gained by a further hearing.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus be, and hereby is denied. A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.