**David Jerome TARNABINE, Petitioner,**

v.

**WARDEN OF LOUISIANA STATE PENITENTIARY, Respondent.**

**Miscellaneous No. 1784.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 19, 1971.

Benjamin Smith, Smith & Scheurermann, New Orleans, La., for petitioner.

John Voltz, Asst. Dist. Atty., for respondent.

CASSIBRY, District Judge:

David Jerome Tarnabine petitions for a writ of habeas corpus seeking his release from state custody on the ground that he is being held in violation of the Constitution. Available state remedies have been exhausted, and the petition is properly before the Court. 28 U.S.C. §§ 2241(c) (3), 2254.

On August 17, 1967, petitioner Tarnabine appeared in Criminal District Court for the Parish of Orleans, State of Louisiana, and entered a plea of guilty to three counts of possession of narcotics,[1] a violation of LSA-R.S. 40:962. Petitioner was sentenced to serve concurrent fifteen-year terms on each of the three counts. Subsequently it was discovered that, because of his age, petitioner was subject to a maximum penalty of ten years on each count. He was returned to Criminal District Court and, on July 9, 1968, his sentences were amended to ten years on one count and five years on the other two counts. One of the five-year sentences was made to run consecutive to the ten-year term, and the other five-year sentence was made to run concurrently. From a practical standpoint, therefore, petitioner still faces a total imprisonment of fifteen years.

On December 18, 1969, Tarnabine petitioned the Criminal District Court for a writ of habeas corpus. The petition alleged that his guilty plea in August, 1967, was invalid because it was based on his attorney's misrepresentation that, as a result of a plea bargain, he would receive three concurrent *five*-year sentences, when in fact the trial judge had said he would impose three concurrent *fifteen*-year sentences. The petition was denied the following day, *without an evidentiary hearing,*[2] with the following comments by the state trial judge:

"On both occasions [the original plea and sentencing in August, 1967,

---

1. Petitioner was originally charged with *sale* of narcotics, but the charges were reduced to *possession* by the District Attorney's office.

2. The significance of the state trial court's failure to hold an evidentiary hearing is reflected in 28 U.S.C. § 2254(d), which provides that upon a full and fair hearing in the state court, that court's determination of a factual issue "shall be presumed to be correct". Unless the state court record "considered as a whole, does not fairly support such factual determination", the burden rests upon the petitioner "to establish by convincing evidence that the factual determination by the State court was erroneous." *See*: Stephen v. Smith, 438 F.2d 979 (5th Cir. 1971).

and the resentencing in July, 1968], the defendant was represented by counsel and made no protest when the sentence was imposed. On the latter occasion, the defendant was represented by two attorneys * * * and on this occasion, made no protest to either Counsel or the Court to the imposition of sentence.

"It would serve no useful purpose to grant an evidentiary hearing now as a sentence of fifteen (15) years total is what the Court intended."

The instant petition was filed on March 24, 1970, in the Baton Rouge Division of this District. Since an evidentiary hearing required the presence of witnesses residing in New Orleans, the matter was transferred to this Division on September 11, 1970. An evidentiary hearing was held on September 30, 1970, at the conclusion of which the Court *ex proprio motu* raised the question of exhaustion of state remedies. The parties were requested to brief both the exhaustion issue and the merits of the petition. A hearing was set for oral argument on the exhaustion issue, but was subsequently continued without date on motion of the petitioner.

On March 19, 1971, the Court was advised by petitioner's counsel that the Louisiana Supreme Court had denied petitioner's application for writs two days earlier, thus exhausting available state remedies. A hearing was held on April 21, 1971, for further argument on the merits of the petition for habeas corpus; the matter was taken under advisement at that time.

At the evidentiary hearing conducted in this matter, the state trial judge testified that he told petitioner's then counsel that he would impose sentences of fifteen years on each count, to run concurrently, if petitioner pled guilty to the charges of possession of narcotics. Neither petitioner nor his counsel objected to the sentences imposed, or moved to withdraw the plea of guilty. No inquiry was made before accepting the plea as to whether it was being voluntarily and intelligently made.[3]

Petitioner Tarnabine testified that his state court attorney was court-appointed at first, but later was paid by his mother. His attorney conferred with the Judge and the Assistant District Attorney shortly before the plea and sentencing in August, 1967, then came back and assured him that the Judge would impose three concurrent five-year sentences if he pled guilty. After the sentences were imposed, petitioner made no protest in open court but did tell his attorney that he had received an "illegal sentence" and that "I thought I was going to get five years." His attorney told him that he did get just five years, and that if any error was made in the sentence, he would have it corrected.

Petitioner's mother generally corroborated her son's testimony. She stated that a few minutes before the plea was made in August, 1967, petitioner's attorney came up to them (she was seated next to her son at that time) and told him he would get three concurrent five-year sentences. When she saw her son in his jail cell later the same afternoon, he told her that he had received an illegal sentence and that "[his attorney] and them didn't keep their promise."

Petitioner's state court attorney also testified at the evidentiary hearing in this Court. After the sentencing, he "thought we had gotten five years concurrent from the Bench. * * * *I thought we had gotten what we were suppose[d] to get.*" (Emphasis added.) Petitioner's attorney admitted that he "communicated [to petitioner] that there

---

3. "The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. * * * The new element added in [Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily: This Court has not yet passed on the question of the retroactivity of this new requirement." Brady v. United States, 397 U.S. 742, 747, 90 S.Ct. 1463, 1468, n. 4, 25 L.Ed.2d 747 (1970).

would be three concurrent sentences of five years." Later in his testimony, under cross-examination by the State, he equivocated somewhat and denied he had ever told petitioner or his family that petitioner would "definitely" get five years.

At the conclusion of the evidentiary hearing, I was of the firm belief that petitioner had indeed been told by his state court attorney that he would receive three concurrent five-year sentences in exchange for a guilty plea. My belief in that regard remains unchanged. I am convinced by the evidence in this case that petitioner's guilty plea was induced by the misrepresentation of his counsel that he would receive three concurrent five-year sentences, when in fact the state trial judge had said he would impose concurrent fifteen-year sentences.

■ To be valid, guilty pleas must be both "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 747, 90 S.Ct. 1463, 1468–1469, 25 L.Ed.2d 747 (1970). In Brady the Supreme Court adopted Judge Tuttle's standard as to the voluntariness of guilty pleas:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)." 397 U.S. at 755, 90 S.Ct. at 1472. [Quoting from Shelton v. United States, 246 F.2d 571, 572, n. 2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)].

In Brady, the Court sustained as valid a guilty plea motivated by the defendant's desire to avoid a possible death penalty. The Supreme Court has also upheld a guilty plea allegedly impelled by a previously coerced confession. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). And in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Court refused to invalidate a guilty plea entered to avoid a possible death penalty, even though accompanied by a claim of innocence. The common denominator of the guilty pleas in Brady, Parker and Alford, however, is that they were each voluntarily and intelligently given.

■ While it may be argued in the instant case that Tarnabine's plea was not coerced or invalid as an involuntary act, it is patent to me that the plea was not "intelligently" entered. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady, supra, 397 U.S. at 748, 90 S.Ct. at 1469. I am convinced that Tarnabine pled guilty under the direct misrepresentation of his attorney that he would receive three concurrent five-year sentences. This is not simply a case in which a defendant pleads guilty based solely on the advice of reasonably competent counsel as to what type or length of sentence he will likely receive. See e. g., Anderson v. Henderson, 439 F.2d 711 (5th Cir. 1971). In this instance, Tarnabine was told by his attorney in no uncertain terms that a plea bargain had been made, and that the judge would impose three concurrent five-year sentences in exchange for a guilty plea. While the Supreme Court has approved plea bargaining, see Brady, supra, 397 U.S. at 750, 90 S.Ct. at 1470, a defendant is certainly entitled to be accurately informed of the consequences of the bargain so that he can intelligently decide whether or not to waive important constitutional rights.

In denying petitioner's application for habeas corpus, the state courts apparently placed much emphasis on the fact that he was represented by retained counsel and made no protest in open court. While these factors are surely relevant

in determining whether petitioner's plea was voluntary and intelligent I do not believe they should be controlling. Here was a young uneducated defendant, apparently a first offender. He complained to his state court attorney about the sentence shortly after it was imposed, and was assured that everything would be taken care of, and that if any error was made, it would be corrected. In the circumstances of this case, I do not find it at all unusual that petitioner voiced no protest to the sentence in open court.

Petitioner's state court attorney was originally court-appointed. Subsequently, however, he was paid by petitioner's mother. Justice Albert Tate of the Louisiana Supreme Court, concurring in the denial of petitioner's application for writs, cited McGriff v. Wainwright, 431 F.2d 897 (5th Cir. 1970), in support of his position. The Court in *McGriff* did state the broad proposition that "misfeasance by privately retained counsel is not state action and therefore does not constitute a deprivation of due process or equal protection." 431 F.2d at 899. *McGriff*, however, and the cases it relied upon as authority for the above proposition, all involved defendants who claimed they were denied their right to appeal because of the failure of their trial counsel to either perfect an appeal or inform them of their rights on appeal. The question in these cases was whether the state had deprived the defendants of their right to appeal. The Fifth Circuit has held that in such cases, the state is entitled to rely on the presumption that a privately retained attorney will protect his client's rights on appeal, Pate v. Holman, 341 F.2d 764, 775 (5th Cir. 1965), and that the state must be made aware of the defendant's inability to retain appellate counsel because of indigency.

*McGriff* and its predecessors are inapposite to the case *sub judice*. We are not concerned here with whether the state deprived petitioner of his right to appeal or to appellate counsel. Rather, the question is whether petitioner's guilty plea was "voluntary" and "intelligent." For example, if a guilty plea is entered by a defendant who, it is proven later, is under the influence of narcotics or mentally incompetent at the time of the plea, no "state action" need be shown to set aside the plea. It is enough to show that the defendant was not fully aware of the surrounding circumstances and consequences of his plea.

It may be feared by some that granting habeas relief to the petitioner in this case will open the door to collusion between defendants and their attorney in seeking federal habeas corpus on the ground of misrepresentation of the terms of a plea bargain. I believe, however, that the customary integrity of members of the bar is itself sufficient to allay such fears. Moreover, since Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the record in state criminal cases must affirmatively disclose that a defendant who pleads guilty is entering his plea understandingly and voluntarily. In such cases, the record on its face would normally refute the type of allegation made in this case. *See*, *e. g.*, Vasi v. United States, 439 F.2d 717 (5th Cir. 1971).

ORDER

The Writ is sustained. Unless, within ten (10) days from the date of this Order the State on its own motion vacates the judgment of conviction, reinstates petitioner's plea of not guilty, and schedules a retrial within sixty (60) days from the date of this Order, the petitioner shall be discharged from custody.