**John Stanley DAVIS, Petitioner,**

v.

**Robert F. PARRATT, Warden, Nebraska Penal and Correctional Complex, et al., Respondents.**

Civ. No. 77–L–222.

United States District Court,
D. Nebraska.

Dec. 4, 1978.

Thomas C. Prohaska, Omaha, Neb., for petitioner.

Terry Schaaf, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for respondents.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court pursuant to petitioner's application for a writ of habeas corpus. Jurisdiction exists under 28 U.S.C. § 2254 (1970).

John Stanley Davis was charged in two separate informations with conspiracy to possess or attempt to possess a controlled substance with intent to deliver, on August 6, 1974, and being an habitual criminal, and with wilfully failing to appear on the drug possession conspiracy charge as legally required, in Omaha, Nebraska, on January 6, 1975.

Davis appeared for arraignment on March 24, 1975, where he was extensively questioned regarding his understanding of the nature of the proceedings and the nature of the charges filed against him.

Davis was first examined regarding the information charging him with failure to appear on January 6, 1975, for trial on the drug conspiracy charge. He waived the statutory advance service and reading of the information charging him with conspiracy to possess a controlled substance with intent to deliver, stating that he had read the information, discussed it with his attorney, understood the charge, and was fully satisfied with counsel [Tr. 2:3–24, 3:1–22].

Davis was advised and stated that he understood the various penalties which could be imposed for the crimes with which he was charged [Tr. 3:23–25, 4:1–10]. He was further advised that by pleading guilty to the charges, he waived his rights to a filing of a complaint and a preliminary hearing to establish probable cause. He acknowledged his understanding of these rights and his desire to waive them [Tr. 4:11–25, 5:1–25, 6:1–18]. The court then explained the elements of the failure to appear charge and the available plea alternatives, which Davis stated that he understood [Tr. 8:1–25, 9:8–25, 10:1–3]. Davis reiterated that he desired to be arraigned that day rather than wait the statutory period of twenty-four hours to examine the information [Tr. 8:18–25, 9:1–7]. The court then advised Davis of all of the constitutional rights which he would waive by pleading guilty [Tr. 10:4–25, 11:1–16]. Davis responded that his plea would be voluntary, uninduced by any promises of leniency or threats, except for a plea bargain agreement to dismiss the habitual criminal count attached to the drug possession charge together with a recommendation for concurrent maximum statutory sentences on both convictions [Tr. 11:17–25, 12:1–25]. The court also advised Davis that by pleading guilty he waived his right to assert any pretrial motions filed in the drug possession case [Tr. 13:20–25, 14:1–18]. The information was then read and Davis entered his guilty plea to the failure to appear charge [Tr. 14:19–25, 15:1]. A factual basis for the plea was established as Davis admitted the accuracy of the court's personal recollection that Davis had disappeared during his trial on the drug possession charge on January 6, 1975, and had failed to surrender himself thereafter [Tr. 15:2–25]. The court then found Davis' plea to the charge to be intelligently and voluntarily made and accepted the plea [Tr. 17:3–11].

The prosecutor next read the information on the drug possession charge. Davis denied exchanging money with his co-conspirator but admitted having heroin in his car [Tr. 17:22–25, 19:5–14]. He stated that he expected to be convicted; thus, in the alternative, he decided to plead guilty rather than risk the additional habitual criminal charge [Tr. 18:4–25, 19:1–2]. The court pointed out that Davis' co-conspirator went to trial, was found guilty of the drug charge and opined that if Davis went to trial, he, too, would be convicted of the charge [Tr. 19:15–22, 20:12–20]. Davis reiterated that while the heroin was in his car, he had no idea of how it came to be there [Tr. 21:6–20]. However, the court went over the facts of the case and again stated

that there was a factual basis for the plea [Tr. 22:15–25, 23:1–10]. Davis' counsel added that while Davis proclaimed his innocence, he believed that the State had sufficient facts to obtain a verdict of guilty in a trial to either the court or a jury [Tr. 23:11–22]. The court then found Davis' guilty plea to the drug charge to be intelligently and voluntarily made, and accepted it [Tr. 24:5–24].

Thereafter, on April 8, 1975, Davis reappeared in district court with counsel to request leave of court to withdraw his two guilty pleas. In support, he asserted that he was not aware that he had waived all of his rights. He stated that he had been tricked and his pleas were not intelligently made because the information charging him with failure to appear referred to the charge on which he had not appeared as "conspiring to possess a controlled substance," rather than the correct charge of "conspiring to possess a controlled substance with the intent to deliver." [Tr. 28:1–24, 29:12–25, 30:1–24]. In response, the court pointed out that the State had been prejudiced by Davis' having absconded in the middle of the joint trial, and further recalled that Bartlett, the co-conspirator, had testified at trial that the heroin belonged to Davis [Tr. 36:6–24]. The court concluded that Davis had demonstrated no manifest injustice which might result if the pleas were permitted to stand, and denied his request to withdraw the pleas [Tr. 42:1–25, 43:1–23].

Subsequently, on May 12, 1975, Davis reappeared with counsel for sentencing. Following a mitigation plea by his counsel, he was sentenced on the drug conspiracy charge to ten years in the Nebraska Penal and Correctional Complex and to a concurrent three year term on the failure to appear charge [Tr. 46:1–25, 47:1–22].

Thereafter, Davis, to no avail, exhausted his State remedies. The Nebraska Supreme Court denied his direct appeal and his appeal from the district court's denial of post-conviction relief, without opinion. On November 3, 1977, Davis' application for a writ of habeas corpus was filed with this Court.

At the outset, the Court believes that it is necessary to discuss various principles developed by the Supreme Court regarding guilty pleas. These principles are directly applicable to this case.

A plea of guilty is constitutionally valid if the record affirmatively shows that the plea has been made voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Once a plea is entered, the petitioner cannot "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Thundershield v. Solem*, 565 F.2d 1018, 1026 (8th Cir. 1977). In other words, a plea of guilty waives all non-jurisdictional defects. *Cantrell v. United States*, 413 F.2d 629, 632 (8th Cir. 1969). Moreover, a guilty plea entered by an accused who is represented by counsel is deemed valid unless it can be demonstrated that counsel's assistance was incompetent and ineffective. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Petitioner asserts that his plea was not entered voluntarily and intelligently. His first argument is that the plea of guilty was defective in that he did not understand what crime he was being charged with, and consequently was not aware of the potential sentence he faced. Petitioner claims that this misunderstanding arose because the information charging him with failure to appear specified the charge on which he had not appeared as "conspiring to possess a controlled substance," as opposed to the correct charge of "conspiring to possess a controlled substance with the intent to deliver."

The Court has laid out the record in this case to demonstrate that the petitioner's contention is baseless in that the record overwhelmingly indicates that the pleas were voluntarily and intelligently made and that the trial court went to great lengths to insure that the petitioner understood the consequences of his plea. While the Court does not wish to sound redundant, it believes that the more significant points in the record should be reiterated in order to sufficiently dispose of this matter.

The record thoroughly indicates that the petitioner knew exactly what crimes he was charged with and was aware of the potential sentences he faced. Throughout the proceedings, both the trial court and the petitioner's attorney referred to the charge as conspiracy to possess a controlled substance *with intent to deliver*. Petitioner stated that he had read the information and had discussed it with his attorney. The record reflects that both the petitioner and his attorney thoroughly understood the charges. Petitioner further stated that he was satisfied with his counsel. Significantly, the trial court explained the maximum penalties which might be imposed if petitioner pled guilty to both charges.[1] The trial court further advised the petitioner of the various rights he would waive and discussed the possible pleas which might be entered. The court also noted that while the petitioner did not specifically admit his guilt, there was a sufficient factual basis for the plea and determined that it was in petitioner's best interest to plead guilty to the charges. Finally, the trial court asked if petitioner fully understood all of his rights, to which he answered in the affirmative. Thus, the record reflects that the petitioner was thoroughly aware of the charges and the potential consequences involved.

Moreover, the Court fails to see how the omission of the words "with intent to deliver" in the information filed regarding his failure to appear misled the petitioner as to the charges to which he was to respond. The original information filed against the petitioner charged him with "conspiracy to possess a controlled substance *with intent to deliver*." He originally pled "not guilty" on August 22, 1974, and a preliminary hearing was held on August 27, 1974. He was then arraigned on September 12, 1974, where a plea of not guilty was entered for him. A motion to suppress was filed on November 22, 1974, which was later overruled. An amended information was filed on November 21, 1974, adding Count II to the original information. After a mistrial, trial was reset for January 6, 1975. It was on that date that petitioner failed to appear.

Obviously, by the time of trial, petitioner knew exactly what crime he was being charged with and when the failure to appear information was filed, he knew exactly what charge this information referred to, to-wit: his failure to appear on January 6, 1975, to answer to the charge of conspiracy to possess a controlled substance *with intent to deliver*. This aspect of the case was thoroughly examined by the trial court and a factual basis for the charge was discussed. Petitioner himself agreed with the court's deliberation on this point. Accordingly, the defect in the failure to appear information was harmless.[2] *See, e. g., Olson v. Tahash*, 344 F.2d 139, 141 (8th Cir.), *cert. denied*, 382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 96 (1965).

In sum, the record clearly demonstrates that the plea was voluntarily and intelligently made. The fact that petitioner pled guilty to avoid the imposition of additional punishment does not invalidate his plea. *See, e. g., Brady v. United States*, 397 U.S.

---

1. Petitioner's reliance on the cases of *Jones v. Montana*, 235 F.Supp. 673 (D.Mont.1964), and *Tarnabine v. Warden of La. State Penitentiary*, 331 F.Supp. 975 (E.D.La.1971), is misplaced. Both cases went much further. Significantly, in *Jones*, the petitioner was never informed of the potential consequences he faced by pleading guilty. That is not the case here.

  In *Tarnabine*, the petitioner's attorney made various express promises in no uncertain terms as to the sentence he would receive. There is nothing in the record to indicate that Davis' attorney ever promised him anything regarding the sentences he would receive in order to force him to plead guilty.

2. Moreover, the Court notes that it has been held that a petitioner may not, pursuant to 28 U.S.C. § 2254, claim that an information or indictment filed against him is defective after he has pled guilty to the charge. This is because the guilty plea is a "break in the chain of events which preceded it in the criminal process [and] precludes [the petitioner] from raising independent claims relating to the deprivation of constitutional rights which occurred prior to the entry of the guilty plea." *Burrows v. Engle*, 545 F.2d 552, 553 (6th Cir. 1976); *see also Maddox v. Sigler*, 325 F.Supp. 978, 982 (D.Neb.), *aff'd*, 445 F.2d 269 (8th Cir.), *cert. denied*, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971).

742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Nor is the plea invalidated by the fact that the petitioner professes his innocence, if the trial court believes there is a factual basis for the charge. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Next, petitioner attempts to attack his plea by claiming that he received ineffective assistance from his attorney.

"The evaluation of a habeas corpus petition alleging ineffective assistance of counsel is a two-step process in this circuit." *Rinehart v. Brewer*, 561 F.2d 126, 131 (8th Cir. 1977). First, the defendant must show that his attorney failed to exercise the customary skills and diligence that a reasonable competent attorney would perform under similar circumstances. *Benson v. United States*, 552 F.2d 223, 224 (8th Cir. 1977), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977); *Pinnell v. Cauthron*, 540 F.2d 938, 939–40 (8th Cir. 1976); *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Secondly the defendant must show he was materially prejudiced in the defense of his case by the actions or inactions of defense counsel. *Rinehart v. Brewer, supra*, 561 F.2d at 131; *Benson v. United States, supra*, 552 F.2d at 224; *Pinnell v. Cauthron, supra*, 540 F.2d at 943; *Crismon v. United States*, 510 F.2d 356, 358 (8th Cir. 1975).

*Morrow v. Parratt*, 574 F.2d 411, 412–13 (8th Cir. 1978).

The Court is of the opinion that any claim regarding ineffective assistance of counsel with respect to the defective failure to appear information must fail. No real claim of ineffective assistance of counsel has been or, as the record indicates, could be successfully raised by the petitioner. Again, the record shows that petitioner's counsel thoroughly discussed the charges with him and the consequences thereof. Both petitioner and his counsel understood the charges, and in light of the trial court's extensive examination of the factual basis underlying the charges, it would seem that counsel's advice to plead guilty was well taken.

Petitioner further contends that counsel was incompetent in failing to assist him in prosecuting an appeal. The Court believes that this contention must also fail.

There is no allegation or anything indicated in the record that the petitioner ever requested that his counsel take an appeal for him. Moreover, it is logical to assume that petitioner's counsel would not anticipate the petitioner's desire to appeal, especially in light of petitioner's guilty plea, the imposition of a sentence expressly bargained for and the trial court's extensive examination. Rather, it is readily apparent that petitioner's attorney exercised good judgment in not attempting to take an appeal from the guilty plea and petitioner was not inadequately represented thereby. *See, e. g., McCormick v. Peyton*, 274 F.Supp. 797 (W.D.Va.1967).

Similarly in *Giles v. Beto*, 437 F.2d 192, 194 (5th Cir.1971), the Court of Appeals for the Fifth Circuit denied a petitioner's claim that the failure to inform him of his right to appeal constituted ineffective assistance of counsel. The Court wrote:

Petitioner's complaint that no notice of appeal was given because he knew nothing of his right to appeal does not entitle petitioner to habeas corpus relief. Other than alleging that his attorney failed to advise petitioner of his right to appeal, petitioner alleges nothing else that could be construed to be an allegation that he was afforded ineffective assistance of counsel. Since petitioner plead [sic] guilty, there would seemingly be no reason for him to have appealed. Nor does petitioner set forth grounds upon which an appeal could have been based. Petitioner merely states that he did not know of his right to appeal, and does not allege facts which indicate that he manifested a desire to appeal either to his attorney, or to the trial court. Under these circumstances, a failure of petitioner's attorney to file an appeal or to advise petitioner of his right to appeal would not entitle petitioner to habeas corpus relief. See *e. g., United States ex rel. Thurmond v. Man-*

*cusi,* 275 F.Supp. 508 (D.C.N.Y.1967); *United States ex rel. Ward v. New York,* 268 F.Supp. 880 (D.C.N.Y.1967); *Bowman v. Peyton,* 287 F.Supp. 863 (W.D.Va. 1968); *Hairston v. Peyton,* 268 F.Supp. 229 (D.C.Va.1967); *Elam v. Peyton,* 265 F.Supp. 231 (W.D.Va.1967); *Lovvorn v. Johnston,* 118 F.2d 704 (9th Cir. 1941); *King v. Wainwright,* 368 F.2d 57 (5th Cir. 1966); *United States ex rel. Mitchell v. Follette,* 358 F.2d 922 (2d Cir. 1966). *See also Perry v. United States,* 429 F.Supp. 938, 939 (E.D.Mo.1977) (Guilty plea); *Lansdown v. Swenson,* 335 F.Supp. 651, 657–58 (W.D.Mo.1971).

■ Finally, petitioner asserts that his sentence was illegal in that he was not given credit for time served in jail prior to sentencing. In light of some recent court decisions in this area, the Court believes that the petitioner is entitled to jail time credit on the ten year drug conspiracy sentence.

In *King v. Wyrick,* 516 F.2d 321 (8th Cir. 1975), the Court of Appeals for the Eighth Circuit was faced with the question of whether the petitioner was entitled to jail time credit under a Missouri state statute which made the granting of such credit mandatory. In *King,* the petitioner pled guilty to second degree murder and second degree burglary. He was sentenced on the second degree burglary charge to the statutory maximum of ten years, to run concurrently with the sentence of twelve years imposed for the murder conviction. The petitioner, claiming that he was entitled to jail time credit, exhausted his state remedies, and filed an application for a writ of habeas corpus in federal district court. In considering the application, District Judge Wangelin adopted the findings of the Magistrate and granted credit on the burglary sentence but not on the murder sentence. Thereafter, the petitioner appealed the denial of credit on the murder sentence. While the Eighth Circuit opinion goes further than this Court intends to go, its underlying reasoning for granting jail time credit is applicable to the instant case. The Court reasoned as follows:

Since *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), many federal courts have come to recognize that failure to grant credit on an indigent prisoner's sentence for time spent in jail before sentencing for failure to meet bail due to indigency has constitutional implications. Several courts have held that it is a denial of equal protection not to grant an indigent prisoner credit for jail time served after he has been unable to meet bail due to indigency when his sentence plus the previous jail time adds up to a total period of incarceration longer than the maximum allowable term prescribed by law for the offense committed. *See, e. g., Parker v. Estelle,* 498 F.2d 625 (5th Cir. 1974); *Hook v. State of Arizona,* 496 F.2d 1172 (9th Cir. 1974); *Hill v. Wainwright,* 465 F.2d 414 (5th Cir. 1972); *Hart v. Henderson,* 449 F.2d 183 (5th Cir. 1971). *See also Reanier v. Smith,* 83 Wash.2d 342, 517 P.2d 949 (1974) (credit on statutory maximum and minimum sentences); *In re Young,* 32 Cal.App.3d 68, 107 Cal.Rptr. 915 (1973) (credit on statutory minimum sentence). This result follows from the holding in *Williams v. Illinois, supra,* 399 U.S. at 244, 90 S.Ct. at 2023, that "the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants, irrespective of their economic status." It was pursuant to this equal protection rationale that the Magistrate recommended that petitioner be granted credit on the maximum 10-year sentence for burglary.

*King v. Wyrick, supra,* 516 F.2d at 323.

While the *King* case involved a Missouri state statute dealing with jail time credit, the Nebraska Supreme Court has also been persuaded by the Eighth Circuit's reasoning. In *State v. Blazek,* 199 Neb. 466, 259 N.W.2d 914, 917 (1977), the Nebraska Supreme Court stated: "Where the maximum term of the sentence pronounced is the statutory maximum for the particular offense,

constitutional implications require that credit for jail time must be given." (Citing *King v. Wyrick, supra* ).

In the instant case, the petitioner received the statutory maximum of ten years for committing the offense of conspiracy to possess a controlled substance with the intent to deliver. He received no credit. In light of the above discussion, the Court is of the opinion that petitioner is entitled to jail time credit from March 24, 1975 to May 12, 1975, to be applied to his ten year drug conspiracy sentence.

However, the Court believes that the petitioner is not entitled to credit on the three year failure to appear sentence. In *Stapf v. United States*, 125 U.S.App.D.C. 100, 367 F.2d 326 (1966), the Court of Appeals for the District of Columbia held that where a prisoner is sentenced to less than the allowable maximum, the court may conclusively presume that credit was given. *See also United States v. Whitfield*, 411 F.2d 545 (8th Cir. 1969). However, as the Court has already mentioned, in *King*, the Eighth Circuit went further and also gave credit on the twelve year murder sentence, even though it was less than the statutory maximum. In *King*, the court reasoned that while the presumption was conclusive, "it was intended to be used only when there was no evidence whatever on the record indicating whether credit had in fact been given." *King v. Wyrick, supra*, 516 F.2d at 324. Since, in *King*, there was "unequivocal evidence on the record that credit in fact was not granted," *King v. Wyrick, supra*, the court held that the *Stapf* presumption did not apply, and gave credit on the murder sentence.

In the instant case, the petitioner received three out of a possible five year sentence on the failure to appear charge. However, there is nothing in the record to indicate that credit had in fact been given. As the Court reads *King*, it believes that the decision still leaves room for the application of the *Stapf* presumption where there is no evidence on the record indicating whether credit had in fact been given. *See also Cook v. Wyrick*, 428 F.Supp. 98, 99 (E.D.Mo.1977). Thus, since the petitioner received a sentence less than the allowable maximum, the Court is of the view that the petitioner is not entitled to credit on the failure to appear sentence under the circumstances of this case. *Compare Eutzy v. State*, 199 Neb. 384, 258 N.W.2d 829 (1977) *with State v. Blazek, supra.*

Moreover, the fact that credit is denied on the failure to appear sentence should not necessarily harm the petitioner. This is clearly apparent since the longer sentence was imposed for the drug offense for which he is entitled to credit, and it is that sentence which legally constitutes the term of punishment as both sentences run concurrently. *See Hardy v. United States*, 292 F.2d 192 (8th Cir. 1961).

An order shall be issued contemporaneously with this memorandum opinion.