WILBURN R. CREWS v. STATE.

196 So. 590

En Banc

Opinion Filed May 31, 1940

Rehearing Denied June 24, 1940

264

*George A. Pierce* and *Edwin L. Jones,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—The plaintiff in error, Wilburn R. Crews, on the 18th day of October, 1938, was indicted by a grand jury of Duval County, Florida, for the crime of murder in the first degree. The indictment alleges that the defendant, on the 16th day of July, 1938, unlawfully and from a premeditated design to effect the death of Oly Mae Crews did then and there kill the said Oly Mae Crews by shooting her to death with a pistol. On October 30, 1938, an order was entered by the Circuit Court of Duval County adjudging Wilburn R. Crews to be insolvent and appointing attorneys George A. Pierce and Edwin L. Jones, of the Duval County Bar, to represent the defendant Wilburn

R. Crews. The defendant entered a plea of not guilty to said indictment.

The record shows that several motions were presented by the defendant and ruled upon by the lower court, including a motion for a continuance filed on the 26th day of January, 1939. The basis of the motion for continuance was that the defendant, through counsel, had filed in the County Judge's Court of Duval County, a suggestion of insanity during the month of November, 1938, and that court had not ruled thereon, notwithstanding the fact that the petition was in full compliance with the statute. The trial court denied the motion for a continuance. On February 6, 1939, another motion for continuance was made on the same ground as the one presented on January 26, 1939; and was also denied by the lower court.

On February 11, 1939, a jury was impaneled and sworn to try the case and evidence was submitted. The jury, after hearing all the evidence, argument of counsel and charge of the court upon the law, rendered a verdict of guilty of murder in the first degree, without recommendation to mercy. Counsel for defendant, within the time prescribed by law, filed a motion for a new trial consisting of 97 grounds, and on the 21st day of July, 1939, motion for a new trial was by the trial court overruled and denied, when the defendant was sentenced to death by electrocution. From this judgment of conviction and sentence writ of error was taken, the record perfected and the case is here for review on a number of assignments of error.

It is contended that the lower court erred in its orders denying the defendant's motion for a continuance of the cause until a subsequent term of the court. The ground or basis for the motions for continuance was that five reputable citizens, under the provisions of Section 3654

C. G. L., in November, 1938, filed a petition in the County Judg's Court of Duval County, Florida, suggesting the insanity of Wilburn R. Crews and asked that he be examined. The petition as filed conformed to the statute, but the County Judge of Duval County failed or omitted to make an order on the petition as presented. The said Wilburn R. Crews at the time was being held in the county jail of Duval County on the charge of killing his wife, Oly Mae Crews.

The second motion for a continuance of the trial of the case until a subsequent term of the court was made on February 6, 1939, some few days prior to the date set for the trial of the case on its merits in the Circuit Court of Duval County. The grounds of this motion for a continuance were substantially the same as contained in the previous motion, viz.: that a petition under Section 3654 C. G. L. was then pending in the County Judge's Court of Duval County seeking an examination of the mental condition of Wilburn R. Crews, and that the petition had not been acted upon by the Judge of the County Judge's Court.

If the Judge of the County Judge's Court had made an order on the petition or had appointed a commission to examine into the mental condition of Wilburn R. Crews and the committee, after a full examination, had reported and recommended that Crews be committed, but little, if any, different results would have occurred because defendant was then being held in the county jail of Duval County, and had the petition been granted as prayed for the petitioner would have been transferred to the Florida Farm Colony or State Hospital as provided for by Section 3677 C. G. L. While it is true that the order of commitment would necessarily have been based on the mental condition of the defendant and the County Judge's Court by law was authorized to make an order as to the custody of the defendant had a com-

mittee so recommended, but these statutes cannot be construed or interpreted so as to prevent the Circuit Court of Duval County from proceeding to exercise its constitutional jurisdiction in placing the defendant on trial under an indictment charging murder in the first degree. The Circuit Court likewise has jurisdiction to adjudicate the mental condition of the defendant. There is no merit to this assignment.

The record here discloses that the defendant below was adjudged insolvent and on the 26th day of January, 1939, applied to the lower court for an order permitting and allowing the defendant authority to employ Dr. H. Mason Smith, a psychiatrist, at a cost of $400.00 to be paid by the County of Duval, to make a physical and medical examination of the defendant and to give testimony on the trial of the cause as to defendant's mental condition. The lower court denied the application. While it is true that the defendant was insolvent and as a matter of law was entitled to the compulsory attendance of witnesses in his behalf and the cost thereof paid by the County of Duval, it does not appear by the petition or exhibits attached as evidence offered in support thereof before the Circuit Court that the proposed testimony of the physician was material or relevant to the defense of the defendant, but left the trial court in doubt and uncertainty as to what favorable testimony, if any, the proposed witness would give if required to appear. The most certain feature of the proposed testimony was a statement therefor in the sum of $400.00 to be paid by Duval County. The record here fails to show and the brief of counsel for plaintiff in error fails to cite authorities showing an abuse of discretion on the part of the lower court.

The testimony shows that on the afternoon of July 16, 1938, defendant hired a cab and went to Mandarin, some few

miles from the City of Jacksonville, where his wife and daughter were then residing with a family by the name of Landiss. When the defendant arrived at the Landiss home, Mrs. Crews, his daughter Shirley, and the Landiss family were in the kitchen eating supper. He asked the privilege of talking with his wife and daughter, and the three left the kitchen and walked out on the front porch of the home. The defendant asked Mrs. Crews and Shirley why they had not visited him in Jacksonville and Mrs. Crews replied that there had not been room for them in the Landiss automobile when it went into Jacksonville. The defendant then said he was going to do what he intended to do, and began shooting at Mrs. Crews. The defendant fired five shots, four of them at his wife and one of them at his daughter Shirley as she ran around the corner of the house in the direction of the kitchen. It is contended by counsel for plaintiff in error that the evidence of the shooting of Shirley Crews was improper, prejudicial and not a part of the *res gestae*. Mrs. Landiss testified as to picking up Shirley Crews immediately after she ran from the front porch to the back of the house, and further testified that Shirley told her that she (Shirley Crews) was shot. Mrs. Landiss' testimony is that she heard the shots on the porch when she was in the kitchen and immediately went to the front of the house and heard Shirley Crews screaming and running away from the scene of the shooting. There is some evidence that the defendant below fired four shots at his wife and while he was firing these shots his daughter Shirley ran from the scene and as she turned the corner of the building the defendant shot her, the ball entering the back of her body as she ran. Mrs. Landiss took the 11-year-old girl, inquired as to her trouble, and was by Shirley told that her father shot her. From our study of the testimony, we conclude that the statements made by Shirley Crews to

Mrs. Landiss were made from one to three minutes after the five reports of the pistol. We do not think that this testimony was prejudicial to the defendant but was a part of the *res gestae*. See Reid v. State, 68 Fla. 105, 66 So. 725.

The defendant is shown to be in his early thirties and was raised on a farm in Pierce County, Georgia, and his father gave testimony as to his difficulties with his studies while in school; that it was difficult for the defendant to learn and that his education was equivalent to the requirements of the sixth grade. His father further testified that the defendant fell from a tree when he was a child, striking his head upon the roots in the fall, and, in the opinion of the witness, his mental condition has been abnormal continuously since. The mother of the defendant gave testimony about the poor progress of the defendant while attending school, and further stated that he received some blow on the head in a fall, which he never overcame.

Dr. Harrell examined the defendant and was asked to give his opinion of the mental capacity of the defendant at the time of the commission of the crime, based upon the amount of alcohol the defendant had consumed sometime prior thereto on an empty stomach.

Dr. Weinreb qualified as an expert in psychiatry and neurology and testified that he had examined the defendant. He was asked for an opinion, based upon his examination, as to the mental capacity of the defendant to commit the crime charged in the indictment.

Dr. Harrell was offered as a witness by the prosecution after his dismissal by counsel for the defendant, and testified that on the 10th day of November, 1938, the defendant Crews was in his office wtih two deputy sheriffs and told Dr. Harrell that he had never been drunk. On cross ex-

amination the State Attorney propounded the following questions to Dr. Harrell: "Q. Well, based upon those examinations, Doctor, of this defendant and your observation of him on these four or five occasions, what is your opinion as to whether this defendant has the mental capacity to distinguish right from wrong?" "A. I believe he has the mental capacity to distinguish right from wrong."

The issue of the sanity of the defendant at the time of the commission of the offense was within the province of the jury to settle, under appropriate instructions, along with the issue of guilt or innocence under the plea of not guilty. See Williams v. State, 45 Fla. 128, 34 So. 279; Johnson v. State, 57 Fla. 18, 49 So. 40; Southworth v. State, 98 Fla. 1184, 125 So. 345; Williams v. State, 100 Fla. 814, 129 So. 456.

. It appears that the testimony of Doctors Harrell and Weinreb offered by the defendant was based upon their study and observation, as well as the history of the defendant, and the opinions sought and the assignment of error were not based upon the sanity of the defendant on the 16th day of July, 1938, the date the unlawful act was committed, but as to the mental rating of the defendant based largely upon facts, conditions and circumstances since the date of the commission of the crime. Several witnesses for the State testified that the defendant was in possession of his mental faculties at the time the crime was committed, but the defendant and the taxicab driver gave testimony to the effect that the defendant had drunk beer and whiskey. The rule controlling the admission of testimony of the physicians appears to have been settled by this Court in the case of Cochran v. State, 65 Fla. 91 (text pp. 97-99), 61 So. 187, in language, viz.:

"Where the insanity of the accused is a material issue in

a criminal prosecution, the court should by charges appropriate to the evidence in the case submit to the jury for their determination the question whether the accused at the time of the unlawful act alleged against him had a sufficient degree of reason to know that he was doing an act that was wrong. Davis v. State, 44 Fla. 32, 32 South. Rep. 822. The phase of insanity commonly known as the 'irresistable impulse' or 'moral insanity' doctrine is not recognized in this State as an excuse for an unlawful act. Williams v. State, 45 Fla. 128, 34 South. Rep. 279; Copeland v. State, 41 Fla. 320, 26 South. Rep. 319.

" 'Intoxication does not excuse or mitigate any degree of unlawful homicide except murder in the first degree, unless as a result of such intoxication there be a fixed or settled frenzy or insanity either permanent or intermittent.' Thomas v. State, 47 Fla. 99, text 106, 36 South. Rep. 161; Garner v. State, 28 Fla. 113, 9 South. Rep. 835.

"In order to acquit on the ground of insanity a defendant charged with homicide, he must have been insane at the time the unlawful act was committed. It is not sufficient that he was insane before or after or both before and after, the unlawful act, but he must have been insane at the particular moment of the homicide. If, however, insanity of a permanent type or continuing nature, or characterized by a habitual and confirmed disorder of the mind, not temporary or occasional, is shown to have existed prior to the commission of the act, it would be presumed to continue up to the commission of the act, unless the presumption be overcome by competent evidence. Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618; Davis v. State, 44 Fla. 32, 32 South. Rep. 822.

"The mental effects of a mere voluntary intoxication may not *excuse* the commission of an unlawful act or relieve

from its consequences; but if excessive and long continued use of intoxicants produces a mental condition of insanity permanent or intermittent, which insane condition exists when an unlawful act is committed, such insane mental condition may be of a nature that would relieve the person so affected from the consequences of the act that would otherwise be criminal and punishable."

We fail to find error in this assignment.

The prosecuting attorney, while addressing the jury, used language, viz.:

"Mr. Hallowes: He is so desperate that he is willing to tell the world that the mother of his little girl died a prostitute.

"Mr. Pierce: I object to that. There is no testimony Mrs. Crews was a prostitute in this record. I object to any such statement made to the jury.

"The Court: Gentlemen of the jury, you have heard the testimony. You know what the testimony is."

It is contended that the use of this language was inflammatory, prejudicial and highly improper. There is evidence in the record given by defendant's witness Bowden as to the conduct of the deceased. It is true that the State offered evidence to impeach the witness Bowden. We do not think, under these circumstances, that the language used by the prosecuting attorney was *de hors* the record, but had its basis in the form of an inference deducible from the evidence adduced at the trial. There is no merit in this assignment.

Counsel for plaintiff in error filed a lengthy motion for a new trial in which the sufficiency of the evidence to sustain the verdict is called into question. We do not think it necessary to discuss or set out *in extenso* the testimony offered by the prosecution in this case. as we think and be-

lieve it to be sufficient, and that the jury, as reasonable men from the facts established, could have found the verdict challenged in this Court. The defendant as witness, admitted he went to the Landiss home, called for his wife and daughter, went to the front porch of the home, and told of a conversation with his wife and a subsequent struggle with the witnesses Hammond and Landiss, when a pistol was taken from the defendant. It can be inferred from the testimony that the defendant admitted the shooting and as a defense thereto seeks to establish that he was insane at the time of the shooting, or did not have the mental capacity to commit the crime. The jury found contrary to this contention.

We have examined the instructions of the court upon the law of the case, heard able oral argument at the bar of this Court, the record has been carefully studied, briefs read and authorities cited examined, and we hold that substantial justice was awarded in the court below.

The judgment appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.