McCORD, Judge.
Appellant, Lenora Jane Marshall, was indicted for first degree murder of her husband and was found guilty by jury of second degree murder. She appeals her judgment and sentence. She contends that the court erred in refusing to admit in evidence a stenographically reported statement which a court reporter witness for the state read into evidence and testified was an accurate transcript of a statement of appellant taken before her. Appellant also contends that, she having prior to trial filed a notice of intent to rely on insanity as a defense, the court erred in precluding the jury’s consideration of the question of insanity. In addition, appellant contends that the evidence was insufficient to sustain the conviction.
As to the trial court’s refusal to admit the stenographically reported statement, appellant contends that it was error to deny her offer of the statement in evidence even though she did not read the stenographer’s record after it was transcribed and did not sign or adopt it in any way as her own statement. She contends that such was not necessary because at the close of the statement it affirmatively appears therefrom that she was told she had the right to read the statement after its being typed or that she had the right to waive the reading of it, and she then waived it. The statement in question was an alleged confession by appellant in which she allegedly gave her version of the homicide.
The law on this subject is well stated in a quotation from 23 C.J.S. Criminal Law § 833, pp. 237-238, which is contained in the court’s opinion in Williams v. State, 185 So.2d 718, 719 (3 DCA 1966):
“If a person orally confesses to a crime, and his statement or words are reduced to writing by another person, the resulting written instrument is not admissible as a written confession until the confessor acknowledges the correctness of the writing. A written confession may be admissible if written or signed by the confessor, or if it was read to or by him, and acknowledged to be correct. If a statement purporting to be a confession is given by accused, and is reduced to writing by another person, before the written instrument will be deemed admissible as the written confession of accused, he must in some manner have indicated his acquiescence in the correctness of the writing itself. If the transcribed statement is not read by or to accused, and is not signed by accused, or in some other manner approved, or its correctness acknowledged, the instrument is not legally, or per se, the confession of accused; and it is not admissible in evidence as the written confession of accused. The written instrument constitutes merely a memorandum of what was said and the only confession that does exist is the oral confession of accused. The oral testimony of witnesses is the only admissible evidence of the purported confession.”
See also 2 Wharton’s Criminal Evidence, § 340, p. 10 (12th Ed. Anderson, 1955); 2 Jones on Evidence, § 390, p. 742 (Grad 5th Ed. 1958); and 23 A.L.R.2d Anno. “Admissibility in Evidence of Unsigned Confession” 919. While it is usually the defendant who objects to the introduction by the state of such stenographic transcript, we know of no reason why the transcript would be any more admissible, where the state is the objecting party rather than the defendant. It is the fact that the defendant (appellant) has not acknowledged it to be a correct transcript of a statement or confession made by her that renders it inadmissible. The testimony of the witness that appellant waived reading the alleged statement prior to its being transcribed does not constitute an acknowledgment by her that the alleged statement is correct. It is only when a defendant acknowledges the transcription of the statement as a correct transcription of what she said that the transcription becomes admissible in evidence. The trial judge in ruling the transcription of the alleged statement inadmissible was eminently fair to appellant in that he allowed her counsel in his closing arguments to read to the jury any portions of the alleged statement which he desired to read to them.
*725 As to appellant’s second contention regarding the question of her sanity, at the conclusion of appellant’s case the court ruled that a prima facie case of insanity had not been shown and that, therefore, the state need not put on rebuttal evidence to show sanity. Also, the trial judge subsequently declined to charge the jury on insanity. The only evidence presented which might tend in any way toward showing insanity was evidence that a short time prior to and at the time of the homicide appellant was in a highly emotional state; that she and the decedent had been in a fight over decedent’s daughter and that he and his daughter had moved out; that he came to see appellant every night until a week before the shooting; that he then telephoned her and told her that he was living with another woman and wanted a divorce; that on the day before the homicide (the homicide occurred during the early morning hours of January 20, 1975) he had promised to come over to her place but then called and cancelled the appointment. Appellant’s father testified that at 1 a. m. on the morning of the homicide, appellant telephoned him and asked to have his gun for protection; that she came over and got the gun which had three bullets in it. Appellant’s ex-husband testified that around 3 a. m. the morning of the homicide appellant telephoned him to come and get the children and told him that she was going to her husband’s and would kill him if necessary; that she was very emotional and told him to call the police and the rescue squad. Decedent’s daughter testified that she and her father moved out from living with appellant following a fight between appellant and decedent; that she and her sister and her father moved into a trailer. She testified that she saw appellant drive by their trailer twice on January 19 and at 3 a. m. on January 20 she was asleep in the trailer with her sister and her father and her mother (who had come to Florida the week before); that she saw appellant drive up and heard her bang on the trailer and tell her father to come out and thereafter appellant broke the glass on the trailer door; that she (the witness) ran to a neighbor’s to call the police; that five minutes later she heard a shot and five minutes thereafter appellant came and said to call the police. The decedent’s ex-wife, who was in the trailer at the time of the homicide, corroborated her daughter’s testimony related above as to the events leading up to the shooting and testified that after her daughter left to telephone the police, decedent dressed and went outside; that shortly thereafter she heard the shot. The evidence shows that during the night of the shooting and at the time of the shooting, appellant was in a highly emotional state, but there was no evidence of insanity under the M’Naghten Rule. There is no evidence that appellant’s mental faculties were such that at the time of the shooting, she could not distinguish right from wrong. The law on this subject is well stated in Evans v. State, 140 So.2d 348, 349 (2 DCA 1962).
“It has long been recognized that sanity is the normal condition of man and that, when charged with a crime, he is presumed to be sane; the mere fact that he has committed a crime is not in itself sufficient to overcome the presumption. Davis v. State, 1902, 44 Fla. 32, 32 So. 822. Thus, in a prosecution for homicide, the defendant has the burden of establishing his plea of insanity by demonstrating that he was legally insane at the time the homicide was committed. McVeigh v. State, Fla.1954, 78 So.2d 694. The State of Florida has long adhered to the “right and wrong” test for the determination of the sanity of a criminal defendant; the test is also referred to as the M’Naghten Rule. See Piccott v. State, Fla.1959, 116 So.2d 626; Davis v. State, supra. This jurisdiction does not recognize that phase of insanity denominated under the title of ‘irresistible impulse’ or ‘moral insanity’ as a defense to a criminal prosecution. The only issue presented under the defense of legal insanity is whether the accused, at the time of the unlawful act alleged to have been committed by him, had a sufficient degree of reason to know that he was doing an act that was wrong. Griffin v. State, Fla.App.1957, 96 So.2d 424; Brock v. *726 State, Fla.1954, 69 So.2d 344; Crews v. State, 1940, 143 Fla. 263, 196 So. 590.”
The same court in Perry v. State, 143 So.2d 528, 531 (2 DCA 1962), made the following statement regarding insanity with which we agree:
“Anger may vitiate prudence; yet it does not constitute insanity. Sanity [sic] must be caused by mental disease. If the defendant has the capacity of distinguishing between right and wrong as to the particular act at the time of the killing, mere emotional insanity or passion or frenzy produced by anger, jealousy or other passion will not excuse him; nor can he discharge himself from responsibility for the homicide by showing that he did the act under the influence of an irresistible impulse. If a person had the capacity of distinguishing between right and wrong, as to a particular act, at the time he does it, moral insanity will not excuse.” (Emphasis added)
As to appellant’s final point, we have examined the evidence and find that it was sufficient to sustain the conviction.
AFFIRMED.
BOYER, C. J., and SCHLEGEL, LEW E„ Associate Judge, concur.