Raymond C. Winstead, Jr. Clerk, Circuit and County Court
Robert L. Nabors Brevard County Attorney Titusville
QUESTIONS:
1. Could the cost of hospital examinations of rape victims made at the request of the state attorney or a law enforcement officer be considered a court cost payable by the county pursuant to ss. 939.07 and 939.15, F. S., and, if so, under what circumstances?
2. Who is responsible for the expense of hospital examinations of rape victims requested by the state attorney or local law enforcement officer?
3. What portion, if any, of the costs of a hospital rape examination could be paid from public funds?
4. Was Ch. 63-1142, Laws of Florida, repealed by s. 406.17, F. S.?
5. If not repealed by Ch. 406, F. S., does Ch. 63-1142, Laws of Florida, provide authority for Brevard County to pay the cost of hospital rape examinations requested by the state attorney or an investigating law enforcement officer?
SUMMARY:
Counties are not authorized by general law to pay hospital costs for examination of living rape victims, requested by law enforcement officers, unless judgment for such costs is entered by the trial judge. A special act affecting Brevard County authorizes appointment, employment, and compensation of a county medical examiner, assistant, or consultant for examination on a living victim of rape, sexual assault, or criminal abortion, as requested by the state attorney or local law enforcement officers, but does not authorize payment by the county for such services to a hospital on a routine basis or when such examinations are performed by hospital personnel or physicians other than the county medical examiner or consultant.
AS TO QUESTION 1:
Section 939.07, F. S., provides:
 In all criminal cases prosecuted in the name of the state in the circuit courts or county courts in this state where the defendant is insolvent or discharged, the county shall pay the legal expenses and costs, as is prescribed for the payment of costs incurred by the county in the prosecution of such cases . . . . (Emphasis supplied.)
Section 939.15, F. S., provides:
 When the defendant in any criminal case pending in any circuit or county court, a district court of appeal or the supreme court of this state has been adjudged insolvent by the circuit judge or the judge of the county court . . .or
when the defendant is discharged or the judgment reversed, the costs allowed by law shall be paid by the county in which the crime was committed, upon presentation to the county commissioners of a certified copy of the judgment of the court against such county for such costs. (Emphasis supplied.)
Recovery of costs in criminal prosecutions was unknown to the common law, but Florida long ago abrogated the common-law rule to provide for costs of prosecution to be included in the judgment rendered against the convicted person in all cases of conviction for crime. Section 939.01, F. S.
Originally, the state was liable for prosecution costs of an insolvent defendant, Buckman v. Alexander, 3 So. 817 (Fla. 1888), but this liability was later shifted by law to the county in which the crime was committed. See s. 939.15 above. At common law, counties have never been liable for any costs. If liable at all, such liability depends solely on the statutes imposing it. When the common-law rule has been changed by statute, the county is liable only to the extent and in the manner provided thereby and only when the requisite statutory steps have been taken. 20 C.J.S.Costs s. 441 and Jackson County v. Stewart, 75 So. 543 (Fla. 1917); accord: Pittman v. State, 41 So. 385 (Fla. 1906), and County of Dade v. Sansom, 226 So.2d 278 (3 D.C.A. Fla., 1969).
Based on these legal principles and the plain meaning of the statutes set out above, the following conditions must be met before the county would be liable for any costs of prosecution: There must be a prosecution, or at least an information filed or indictment found, pursuant to s. 939.14, F. S.; the defendant must be discharged or adjudged insolvent; there must be a judgment against the county for the particular cost; and the cost must be among those `allowed by law' or `taxable' against the county.
In addition to these requirements, s. 939.08, F. S., further requires that, before payment of a bill of costs, fees, or expenses (other than juror and witness fees) by the county in a criminal prosecution, an itemized statement therefor must be submitted to the county commission, and the board of county commissioners must approve and certify thereon that it is `just, correct and reasonable, and that no unnecessary or illegal item is contained therein.' Finally, if the payment is to be made from the county fine and forfeiture fund which, pursuant to s. 142.01, F. S., `shall be paid out only for criminal expenses, fees, and costs, where the crime was committed in the county and the fees and costs are a legal claim against the county' (Emphasis supplied.), then the payment must be made `in accordance with the provisions of [Ch. 142].'
The answer to the first part of your question is that ss. 939.07 and 939.15 F. S., provide no authority for county payment of the costs of a rape examination as a cost of prosecution on a routine
basis as you described for the simple reason that there is no prosecution yet. Further, there is no certainty that there will ever be a prosecution for each alleged rape or that the defendant would be discharged or adjudged insolvent. However, as discussed below, the county could become responsible for particular rape examination costs on a case-by-case basis pursuant to these statutory provisions.
Prior to 1975, it was the opinion of this office that `costs allowed by law' against a county meant `only those costs incurred in the actual trial proceedings' and not those expenses incurred in preliminary hearings and investigations by the state attorney prior to the finding or filing of an information or indictment charging the commission of a crime. Attorney General Opinion 074-301. See also AGO's 075-297, 075-271, 072-39, and 071-26. However, it is no longer the rule that the county is not liable for preindictment, preinformation costs.
In 1975 the First and Second District Courts of Appeal adopted the `useful purpose' test in determining what costs are properly taxable in criminal actions, Dinauer v. State, 317 So.2d 792 (1 D.C.A. Fla., 1975), and Powell v. State, 314 So.2d 788 (2 D.C.A. Fla., 1975), and this has expanded the potential county liability. In AGO 076-72, my predecessor in office applied the new standard to the question of county liability for the costs of a court reporter taking the sworn statements of witnesses at the request of a state attorney or public defender in the case of a discharged or insolvent defendant and concluded that the county should pay `all costs of prosecution, including preindictment, preinformation, and deposition costs, when it is determined by thecourt that such served a `useful purpose." (Emphasis supplied.)
This does not mean that the county could be liable for preindictment, preinformation costs before the filing or finding of an information or indictment; but it does mean that preindictment, preinformation costs may be included in the judgment for costs against the county when all of the other conditions discussed above are satisfied. Attorney General Opinion 076-72 emphasized that determining what constitutes a `useful purpose' is within the sole discretion of the trial judge.
The final decision of whether or not a county is liable for the cost of a hospital rape examination will be determined by the trial court on a case-by-case basis, and only when the preconditions have been satisfied. If a prosecution ensues, if the defendant is adjudged insolvent or discharged, if the court finds that such evidence served a `useful purpose' in trial preparation — whether or not it was actually used in the trial — and issues or renders a judgment against the county for such costs, then the county would be properly liable for that cost.
My research has disclosed no case in Florida, or any other jurisdiction, specifically finding that the cost of a rape examination was included in, or excluded from, prosecution costs taxed against a county. However, in recent years, Florida courts have construed `taxable costs' of a discharged or insolvent defendant to include certain transcript costs, Wood v. City of Jacksonville, 248 So.2d 176 (1 D.C.A. Fla., 1971), and costs of deposing officers, Warren v. Capuano, 282 So.2d 873 (Fla. 1973), but not bail bond premiums, Wood and Capuano, supra, or defendant's travel and lodging expenses, Dinauer, supra, or fees for psychiatrist's testimony denied admission into evidence because no proof of relevance was made at trial, Crews v. State,196 So. 590 (Fla. 1940). In other cases the county has been obligated to reimburse a solvent acquitted defendant for witness fees and other expenses, Powell, supra. In Green v. State,251 So.2d 307 (1 D.C.A. Fla., 1971), the First District Court of Appeal affirmed the trial court's refusal to order a medical procedure (removal of a bullet by surgery which was not medically necessary) at county expense to be performed on a victim, with the victim's consent, to gather evidence allegedly for the benefit of the defendant.
AS TO QUESTION 2:
In question 1 I discussed the liability of the county, pursuant to Ch. 939, F. S., to pay the costs of criminal prosecution in certain cases. From this it appears that the county would be responsible for a hospital rape examination bill only if ordered by the court on a case-by-case basis and only under the circumstances prescribed in the statute.
There are various statutory provisions outside Ch. 939 that require counties to pay particular fees or costs connected with criminal investigations or prosecutions from general funds or from the Fine and Forfeiture Fund. See, e.g., s 925.09 (autopsies ordered by the state attorney and performed by a physician other than the medical examiner); ss. 921.09 and 921.12 (physician's fees for determining sanity or pregnancy in a sentencing proceeding); and see especially s. 827.07(4)(c) (cost of x-rays of a suspected child abuse victim). However, none of these applies to a rape examination, and I am aware of no statute (other than Ch. 939) that would by fair implication make such a cost payable by the county on a routine basis under the circumstances you described. Public funds can be spent only for an authorized purpose, and there can be no payment of county funds except as authorized by law. Attorney General Opinion 076-191; cf. AGO 071-28.
Hospitals licensed under Ch. 395, F. S., and providing emergency room services are already expressly authorized pursuant to s. 395.19 to
 arrange for the rendering of appropriate medical attention and treatment to victims of sexual assault through . . . [t]he administration of medical examinations, tests, and analyses required by law enforcement personnel in the gathering of evidence required for investigation and prosecution. (Emphasis supplied.)
The original bill, S.B. 1215, which eventually became Ch. 75-182, Laws of Florida, codified as s. 395.19, required hospitals to treat sexual assault victims, provided other responsibilities of the hospitals, and established penalties for noncompliance. This section is not now cast in mandatory terms and does not provide any manner of payment for said medical attention; however, the particular wording raises the possibility that the `arrangement' could include payment from some authorized agency other than the hospital.
One source of such payments could be the agencies of the `law enforcement personnel' requesting the examinations in the course of their criminal investigative activities and functions. Both the state attorney and local law enforcement officers are authorized to investigate crimes within their jurisdictions, and they are further authorized to receive and spend public funds for the necessary operating expenses and functions of their offices. The state attorney receives appropriations from state revenues for the operations of his office, including investigatory functions, pursuant to ss. 27.25 and 27.33, F.S.; the sheriff is authorized to request funds for expenses (other than salaries) and for investigations in his proposed budget to be appropriated from county general funds, s. 30.49(2)(c) and (e), F. S., see also
subsections (4) and (6); and municipal police departments are likewise funded for criminal investigations by their respective municipalities.
Concerning the state attorneys, the county is obliged to providefacilities and services, such as office space, utilities, telephone, transportation, communication, and other necessities for the efficient `functioning' of their offices, s. 27.34(2), F. S., but is prohibited from appropriating or contributing funds to the `operation' of these offices, s. 27.34(1). This distinction was discussed in AGO 073-17, which condluded that county payments to a medical examiner for examinations performed at the request of the state attorney were not in violation of the prohibition against county funding of the operations of the state attorney's office. Approval of that payment was based on express statutory authority, s. 406.07, F. S., and does not provide the basis for other county expenditures related to the state attorney's office without a similar statutory authorization.
Concerning local law enforcement, the county must provide moneys to fund the sheriff's budget as finally approved or modified pursuant to s. 30.49, F. S., for the operation of the sheriff's office, but county discretion is limited to the amounts that can be budgeted in each of the statutorily prescribed categories, s.30.49(2)(a)-(f), (4), and (6), and the county may not exercise any discretion concerning the uses of county funds within each category. Weitzenfeld v. Dierks, 312 So.2d 194 (Fla. 1975). The sheriff disburses such funds and pays such budgeted expenses of his office in the manner prescribed in s. 30.50(2), F. S.
The reason for performing an examination of a rape victim is to gather tangible, physical evidence in the preliminary stages of a criminal investigation, which evidence is expected to be used in the eventual prosecution or in the decision to prosecute. Typically, there is no defendant yet, no indictment, no information, and no pending prosecution. Thus, I am of the opinion that spending public funds to pay for an evidence-gathering hospital examination or test at such a preliminary stage would be a decision within the discretion of the agency charged with the duty to perform such criminal investigation.
AS TO QUESTION 3:
As discussed in answering questions 1 and 2, unless and until otherwise provided by law, a county could be liable for the cost of a rape examination if the expense served a `useful purpose' as found by a court judgment in the prosecution of an insolvent or discharged criminal defendant, and the office of the state attorney or the local law enforcement agency with the authority to investigate alleged crimes could be responsible for the cost of a rape examination performed at the request of such agency. Consequently, the authority to spend public funds in the one situation is limited by the `useful purpose' standard and in the other by the authorized and lawful criminal investigatory function.
As analyzed in AGO 076-72, and the cases cited therein, `useful purpose' means that the evidence or information in question was useful in advancing the cause of the prosecution for which it was taken (in the determination of the trial judge). Applying this standard to the payment of a bill for a hospital rape examination would conceivably include those portions of the examination having a reasonably foreseeable application to a prosecution for rape and would not include those portions of the examination performedsolely for medical treatment of the victim. It is possible that particular charges on such a hospital bill could, arguably, fit into either category — prosecutory usefulness or medical necessity — but this would be resolved by the court in the exercise of its judicial discretion.
In any case, public funds should not be spent as a cost of investigation or prosecution for the examination or treatment of a victim solely for medical purposes. Indeed, the Legislature enacted the Florida Crimes Compensation Act, Ch. 960, F. S., in 1977 to provide state appropriations and funds from other sources to fill this and related financial needs of crime victims.
AS TO QUESTION 4:
Chapter 63-1142, Laws of Florida, relating to Brevard County, is one of several special acts enacted prior to 1970, authorizing particular counties, or counties having a certain population size, to appoint, employ, compensate, and provide facilities for county
medical examiners who would perform death examinations and, in some cases, e.g., as in s. 8, Ch. 63-1142, examinations of victims of rape, sexual assault, and criminal abortion at the request of the state attorney or investigating law enforcement officer.
In 1970 the Legislature enacted Ch. 406, F. S., establishing a statewide system of district medical examiners to perform necessary death examinations, providing for their appointment by the Governor on the recommendation of a medical examiners commission, and providing for their compensation, salary, and fees to be set by boards of county commissioners in the respective districts. Section 406.17 specifically provides that Ch. 406 supersedes conflicting provisions of special acts; however, there is no provision in Ch. 406 concerning the examination of rape victims, except, of course, in those cases where the victim was also killed. Some of the special acts were expressly repealed in 1971 following the enactment of Ch. 406. See, e.g., Ch. 71-29, Laws of Florida, repealing Ch. 59-689, Laws of Florida, and Chs. 30228 and 30388, 1955, Laws of Florida. Those not expressly repealed would be repealed, if at all, only by implication of the language in s. 406.17.
It is a familiar rule of statutory construction that repeal of statutes by implication is disfavored in the law, and that that construction is favored which permits a separate field of operation for each statute validly enacted on the same subject. American Bakeries Co. v. Haines City, 180 So. 524 (Fla. 1938), and State v. Gadsden County, 58 So. 232 (Fla. 1912). Accord: Mann v. Goodyear Tire and Rubber Co., 300 So.2d 666 (Fla. 1974); Garner v. Ward, 251 So.2d 252 (Fla. 1971); and AGO 077-86.
Especially with regard to general acts later in time and relating to the same subject as valid special or local laws, Florida courts follow the general rule laid down in Stewart v. DeLand-Lake Helen Special Road Bridge District, 71 So. 42 (Fla. 1916), and quoted with approval in Sanders v. Howell, 74 So. 802, 804 (Fla. 1917):
 . . . [a] general act will not be held to repeal or modify a special one embraced within the general terms of the general act, unless the general act is a general revision of the whole subject, or unless the two acts are so repugnant and irreconcilable as to indicate a legislative intent that the one should repeal or modify the other. (Emphasis supplied.)
Since Ch. 406 is silent on the subject of district medical examiners performing rape examinations, those provisions of Ch. 63-1142 concerning county medical examiners performing rape examinations on live persons are not in conflict therewith or revised thereby. Not being in conflict with Ch. 406 or covered or revised thereby, they have not been superseded and must still be given full force and effect. Section 8, Ch. 63-1142, Laws of Florida, authorizes but does not require a county medical examiner or his assistant or consultant to perform rape examinations. In order to give meaning and effect to this section, it is my opinion that the other sections of this special act must necessarily continue in effect to authorize the county to appoint, employ, compensate, and provide facilities for a county medical examineronly for the purpose of examining live victims of rape, sexual assault, and criminal abortion. Thus, the authority remains for the county to employ and compensate a medical examiner or his assistant or consultant for these purposes according to the other provisions of Ch. 63-1142. This was the informal opinion of this office expressed to you by letter of March 3, 1977, and it is now my opinion that Ch. 63-1142, Laws of Florida, has not been superseded in toto by Ch. 406, F. S., unless and until the Legislature expressly does so or it is judicially determined otherwise.
AS TO QUESTION 5:
Although Ch. 63-1142, Laws of Florida, appears not to have been totally superseded by the operation of Ch. 406, F. S. (see
question 4), the special act does not authorize Brevard County to pay a hospital bill when hospital personnel or physicians, other than the county medical examiner or consultant, have performed the examination permitted by s. 8, Ch. 63-1142 to be performed by the county medical examiner or one of his assistants or consultants. In Ch. 63-1142 the Legislature provided the manner in which Brevard County may undertake to provide examinations of rape victims in cooperation with the state attorney and law enforcement officers. If the Legislature has provided how something shall be done, that is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); cf. White v. Crandon, 156 So. 303 (Fla. 1934).
Furthermore, it is my opinion that this special act does not provide authority for the district medical examiner, empowered, appointed, and compensated according to Ch. 406, F. S., to perform rape examinations under the portions of Ch. 63-1142 not superseded by Ch. 406. Rule 10D-67.32, F.A.C., promulgated in 1977 by the Medical Examiners Commission, pursuant to s. 406.04 declares that `[t]he authority of the District Medical Examiner is limited by Section 406.11, Florida Statutes,' and thus precludes any expansion of authority for those district examiners whose district happens to include a county with the additional authority of a special act, as discussed in question 4.
In summary therefore, I conclude that ss. 939.07 and 939.15, F. S., do not authorize routine county payment of hospital bills for rape examinations requested by a state attorney or local law enforcement officer, but a county could become liable for such a bill if the trial judge finds that the examination served a `useful purpose' in the prosecution of a discharged or insolvent defendant and issues or renders a judgment against the county for such costs. Initial financial responsibility for those portions of a hospital rape examination requested in the investigation of an alleged crime should be arranged between the hospital and the investigating agency, and, unless otherwise provided by law, county responsibility for a hospital rape examination would arise only on a case-by-case basis following a judgment for costs in an actual prosecution. Under the `useful purpose' standard for assessing prosecution costs or in the discretionary use of funds appropriated and budgeted for the expenses of criminal investigations, public funds could be used only for those portions of a hospital rape examination that related to gathering physical evidence during an authorized and lawful criminal investigation for criminal prosecution and could not be used for charges or expenses relating solely to medical treatment of the victim. Chapter 63-1142, Laws of Florida, relating to Brevard County, has not been entirely repealed or superseded by Ch. 406, F. S., and continues to authorize the appointment, employment, and compensation of a county medical examiner, his assistants, and consultants for the purpose of examining living victims of rape, sexual assault, and criminal abortion; however, this special act does not authorize Brevard County to pay hospital bills for rape examinations performed by hospital personnel or physicians other than the county medical examiner or consultant.
Prepared by:
Carol Z. Bellamy Assistant Attorney General